1    UNITED STATES BANKRUPTCY COURT

2    DISTRICT OF DELAWARE

3

4

5    In re:                        :

                                    :    Chapter 11

6        DEX MEDIA, INC.            :

                                    :    Case No. 16-11200-KG

7                                   :

            Debtors.                :    (Joint Administration

8    _____:    Requested)

9

10

11

12                                  United States Bankruptcy Court

13                                  824 North Market Street

14                                  Wilmington, Delaware

15

16                                  May 18, 2016

17                                  9:03 AM - 9:42 AM

18

19

20

21   B E F O R E :

22   HON KEVIN GROSS

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO OPERATOR:   MICHAEL MILLER

1   HEARING re Debtors' Motion for Entry of an Order (I)

2   Directing Joint Administration of Related Chapter 11 Cases,

3   and (II) Granting Related Relief [D.I. 3, 5/16/16]

4

5   HEARING re Debtors' Motion for Entry of an Order (I)

6   Authorizing the Debtors to File a Consolidated List of

7   Creditors in Lieu of Submitting a Separate Mailing Matrix

8   for Each Debtor, and (II) Granting Related Relief [D.I. 16,

9   5/16/16]

10

11  HEARING re Debtors' Motion for Entry of an Order (I)

12  Scheduling a Combined Disclosure Statement Approval and Plan

13  Confirmation Hearing, (II) Establishing a Plan and

14  Disclosure Statement Objection Deadline and Related

15  Procedures, (III) Approving the Solicitation Procedures, and

16  (IV) Approving the Confirmation Hearing Notice [D.I. 17,

17  5/16/16]

18

19  HEARING re Debtors' Motion for Entry of Interim and Final

20  Orders Under 11 U.S.C. §§ 105, 361, 362, 363, and 507, and

21  Bankruptcy Rules 2002, 4001, and 9014 (I) Authorizing

22  Debtors to Use Cash Collateral, (II) Granting Adequate

23  Protection to Prepetition Secured Parties, (III) Scheduling

24  a Final Hearing Pursuant to Bankruptcy Rule 4001(b), and

25  (IV) Granting Related Relief [D.I. 13, 5/16/16]

1   HEARING re Debtors' Application for Entry of an Order,

2   Pursuant to 28 U.S.C. § 156(c) (I) Approving the Retention

3   and Appointment of Epiq Bankruptcy Solutions, LLC as the

4   Claims Noticing Agent to the Debtors, Effective Nunc Pro

5   Tunc to the Petition Date, and (II) Granting Related Relief

6   [D.I. 4, 5/16/16]

7

8   HEARING re Debtors' Motion for Entry of Interim and Final

9   Orders (I) Authorizing the Debtors to (A) Continue to

10   Operate the Cash Management System, (B) Honor Certain

11   Prepetition Obligations Related Thereto, (C) Maintain

12   Existing Business Forms, (D) Continue to Perform

13   Intercompany Transactions, (E) Waive the Requirements

14   Contained in Section 345(b) of the Bankruptcy Code, and (II)

15   Granting Related Relief [D.I. 5, 5/16/16]

16

17   HEARING re Debtors' Motion for Entry of an Order (I)

18   Authorizing the Debtors to Maintain and Administer their

19   Existing Customer Programs and Honor Certain Prepetition

20   Obligations Related Thereto, and (II) Granting Related

21   Relief [D.I. 6, 5/16/16]

22

23   HEARING re Debtors' Motion for Entry of an Order (I)

24   Authorizing the Debtors to Pay Certain Prepetition Claims in

25   the Ordinary Course of Business, and (II) Granting Related

```
                                                    Page 4
 1    Relief [D.I. 7, 5/16/16]

 2

 3    HEARING re Debtors' Motion for Entry of Interim and Final

 4    Orders (I) Authorizing the Payment of Certain Taxes and

 5    Fees, and (II) Granting Related Relief [D.I. 8, 5/16/16]

 6

 7    HEARING re Debtors' Motion for Entry of an Order (I)

 8    Authorizing Debtors to (A) Continue Their Prepetition

 9    Insurance Coverage, (B) Satisfy Payment of Prepetition

10    Obligations Related Thereto, and (C) Renew, Supplement, and

11    Enter into New Insurance Coverage in the Ordinary Course of

12    Business, and (II) Granting Related Relief [D.I. 9, 5/16/16]

13

14    HEARING re Debtors' Motion for Entry of Interim and Final

15    Orders (I) Approving Notification and Hearing Procedures for

16    Certain Transfers of Equity Securities, and (II) Granting

17    Related Relief [D.I. 10, 5/16/16]

18

19    HEARING re Debtors' Motion for Entry of Interim and Final

20    Orders (I) Approving the Debtors' Proposed Adequate

21    Assurance of Payment for Future Utility Services, (II)

22    Prohibiting Utility Companies from Altering, Refusing, or

23    Discontinuing Services, (III) Approving the Debtors'

24    Proposed Procedures for Resolving Adequate Assurance

25    Requests, and (IV) Granting Related Relief [D.I. 11,
```

1   5/16/16]

2

3   HEARING re Debtors' Motion for Entry of Interim and Final

4   Orders (I) Authorizing the Debtors to (A) Pay Prepetition

5   Wages, Salaries, and Other Compensation and Certain

6   Reimbursable Expenses, (B) Continue Employee Benefits

7   Programs, (C) Continue Certain Ordinary Course Incentive

8   Programs for Non-Insiders, and (D) Pay Related Costs, and

9   (II) Granting Related Relief [D.I. 12, 5/16/16]

10

11   HEARING re Debtors' Motion for Entry of Interim and Final

12   Orders Under 11 U.S.C. §§ 105, 361, 362, 363, and 507, and

13   Bankruptcy Rules 2002, 4001, and 9014 (I) Authorizing

14   Debtors to Use Cash Collateral, (II) Granting Adequate

15   Protection to Prepetition Secured Parties, (III) Scheduling

16   a Final Hearing Pursuant to Bankruptcy Rule 4001(b), and

17   (IV) Granting Related Relief [D.I. 13, 5/16/16]

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

```
1   A P P E A R A N C E S :

2

3   PEPPER HAMILTON LLP

4        Attorneys for Ad Hoc Group of Noteholders

5

6   BY:  EVELYN MELTZER

7

8   MILBANK, TWEED, HADLEY & MCCLOY LLP

9        Attorneys for Ad Hoc Lenders Group

10

11  BY:  GERARD UZZI

12       BRIAN KINNEY

13

14  MUDRICK CAPITAL

15

16  BY:  KENT KIM

17

18  AKIN GUMP

19       Attorneys for Ad Hoc Group of Noteholders

20

21  BY:  ASHLEY R. BEANE

22

23

24

25
```

```
 1   MORRIS, NICHOLS, ARSHT & TUNNELL LLP
 2        Attorneys for ad hoc lenders group
 3
 4   BY:  GREGORY WERKHEISER
 5
 6   YOUNG CONAWAY STARGATT & TAYLOR, LLP
 7        Attorneys for the Debtors
 8
 9   BY:  PATRICK JACKSON
10
11   KIRKLAND & ELLIS
12        Proposed counsel to the Debtors and Debtors
13        in Possession
14
15   BY:  ADAM PAUL
16        BRAD GIORDANO
17        RYAN HEHNER
18
19   U.S. DEPARTMENT OF JUSTICE
20        Attorney for U.S. Trustee
21
22   BY:  TIMOTHY J. FOX, JR.
23        JANE LEAMY
24
25
```

1    ANDREW HEDE - First Day Declarant

2

3    RICHARDS LAYTON & FINGER

4         Attorneys for Agents

5

6    BY:  MARISA A. TERRANOVA FISSEL

7

8    SIMPSON THACHER & BARTLETT LLP

9         Attorneys for Agents

10

11   BY:  NICK BAKER

12        MATT PETRONE

13

14   LAW OFFICE OF SUSAN KAUFMAN

15

16   BY:  SUSAN KAUFMAN

17

18   APPEARING TELEPHONICALLY:

19

20   PEG A. BRICKLEY

21   KAREN B. DINE

22   BRETT GOLDBLATT

23   PATRICK HOLOHAN

24   BRIAN KINNEY

25   TERESA KUI

1    MARK SHINDERMAN

2    DAVID A. WENDER

3    STEPHANICE S. WICKOUSKI

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S
 2              THE COURT:  Good morning, everyone.  You may be
 3     seated.  Thank you.  Mr. Jackson, good morning.
 4              MR. JACKSON:  Good morning, Your Honor.  For the
 5     record, Patrick Jackson of Young Conaway Stargatt & Taylor
 6     for Dex Media, Inc. and its affiliated Debtors and Debtors-
 7     In-Possession.
 8              THE COURT:  Yes.
 9              MR. JACKSON:  And first off, we of course would
10     like to thank Your Honor for accommodating us with an early
11     hearing today.  I think that's going to facilitate a lot of
12     travel schedules --
13              THE COURT:  Good.
14              MR. JACKSON:  -- hopefully, later on, so much
15     appreciated.  With me at counsel table are Adam Paul, Brad
16     Giordano and Ryan Hehner from Kirkland & Ellis --
17              THE COURT:  Good morning.
18              MR. JACKSON:  -- in Chicago, whom Your Honor
19     admitted pro hoc vice yesterday.
20              THE COURT:  Yes.
21              MR. JACKSON:  And we thank you for that.  And
22     without further ado, then, I will cede the podium to Mr.
23     Paul.
24              THE COURT:  All right.  Thank you, Mr. Jackson.
25     Mr. Paul, good morning.
```

1          MR. PAUL:  Good morning, Your Honor.  Again, for

2    the record, Adam Paul appearing on behalf of the Debtors and

3    Debtors-In-Possession.  Your Honor --

4          THE COURT:  It's a familiar case to me.

5          (Laughter)

6          MR. PAUL:  I recognize that.

7          THE COURT:  Yes.  Yes.

8          MR. PAUL:  And as I was thinking about what I was

9    going to present to Your Honor today, I thought about

10   dispensing with my opening arguments --

11         THE COURT:  Well, go ahead.

12         MR. PAUL:  -- given that this is the third time --

13   the third time around that we've been before Your Honor.

14   But I would like to make a few opening remarks.

15         THE COURT:  Absolutely.  Take your time.

16         MR. PAUL:  Your Honor, before I do so, I'd like to

17   introduce, on behalf of the company, Mr. Ray Ferrell, who's

18   our General Counsel.

19         THE COURT:  Mr. Farrell, good morning.

20         MR. FARRELL:  Good morning.

21         MR. PAUL:  And then also, Mr. Andrew Hede --

22         THE COURT:  Mr. Hede, good morning, sir.

23         MR. HEDE:  Good morning, Your Honor.

24         MR. PAUL:  -- who is Managing Director of Alvarez

25   Marsal, our Chief Restructuring Officer and our First Day

1    Declarant.

2              THE COURT:  Yes.

3              MR. PAUL:  And I would also echo Mr. Jackson's

4    remarks in appreciation for the Court accommodating us on

5    the first day early in the morning.  I understand how busy

6    everyone is, especially in this market, and we do really

7    appreciate the accommodation that you and your staff have

8    made.

9              THE COURT:  You're very welcome, Mr. Paul.

10             MR. PAUL:  Your Honor, also, I would like to thank

11   Mr. Fox, who, over the past week or so, has provided us with

12   a number of helpful and constructive comments and I think,

13   to Mr. Jackson's point, that it will allow us to have,

14   hopefully, a fairly smooth first day hearing.

15             THE COURT:  All right.

16             MR. PAUL:  With that, Your Honor, I would like to

17   take this opportunity to make few brief remarks and

18   introductory statements on behalf of the Debtors.  And as I

19   said before, Your Honor, I recognize that it is the third

20   time that this company has been, in some form or fashion,

21   before this Court.  But between the time that we last filed

22   with a pre-packaged plan, in 2013, and today, there are

23   significant differences between the two cases, and I'd like

24   to take you through some of those.

25             THE COURT:  Please.

1            MR. PAUL:  First, let me start with some of the

2      similarities.  The first similarity is that we're here

3      before Your Honor with, again, a fully consensual, pre-

4      packaged plan of reorganization.  I don't know whether or

5      not Your Honor had the opportunity to look at the votes but

6      --

7            THE COURT:  Yes.

8            MR. PAUL:  -- we're here today with unanimity on

9      behalf of the senior lenders, which didn't even occur during

10     the last go around when I think we had two holdouts.  And

11     also, we have in hand, votes on behalf of the senior lenders

12     well in excess of two thirds in value and one half in

13     number.

14            We're also appearing today with the support of

15     over 70 percent in value of the noteholders who have signed

16     up to our restructuring support agreement, and we fully

17     expect, as we get closer to the voting deadline for those

18     noteholders, that votes will come in, again, in favor of the

19     plan.  Your Honor, we're very proud of these results, and

20     they are the product of negotiations that stretched out for

21     almost a year.  These results would not have been possible

22     without the efforts and professionalism exhibited by the

23     advisors to the senior lenders, specifically Milbank and

24     Houlihan Lokey, as well as the advisors to the noteholders,

25     Akin Gump and Ducera.

1              Your Honor, another similarity that we have here

2    today is that we have a structurally sound and healthy

3    company that's operating in a difficult market.  However, we

4    have a new management team in place, and with their help,

5    Dex has a renewed mission and a re-energized workforce.  We

6    have a new digital business plan that focuses on the digital

7    needs of a large, untapped market, small-to-medium sized

8    businesses, and we've slowed the decline in our print

9    revenues and initiated significant cost reductions.  And as

10   you may have seen in our projections, Your Honor, all of

11   these changes and initiatives have put Dex on a path of

12   profitability.

13             Now, let me talk about the difference between

14   today and where we were in 2013.  The primary difference

15   here, Your Honor, is that today, Dex is addressing its

16   highly leveraged balance sheet and its overly complicated

17   capital structure -- organizational structure.  As you know,

18   neither of these issues were addressed during the previous

19   bankruptcy case filed in 2013.  At the time, Your Honor,

20   understandably, the company expected to be able to carry

21   that debt, given the -- its expected capitalizing on the

22   synergies associated with the merger and prior digital

23   initiatives.  Unfortunately, Your Honor, it became clear in

24   early 2015 that the company would not be able to service its

25   debt and that some sort of balance sheet restructuring would

1    be necessary, and would be necessary in the near term, given

2    the upcoming maturities with respect to the senior debt in

3    late 2016, and the unsecured noteholders in early 2017.

4            And so, over the next several months, Your Honor,

5    the parties engaged in extensive negotiations around a

6    restructuring support agreement that serves as the basis of

7    the plan that's before you -- the Court today.  It's a plan,

8    Your Honor, that first, significantly de-levers the balance

9    sheet by eliminating over $1.5 billion in funded debt.  It

10   also simplifies both Dex's capital and organizational

11   structure, it pays all trade claims in full, and positions

12   Dex to execute on its new business plan and return to

13   profitability.  Now, Your Honor, I recognize that as much as

14   I enjoy appearing before you and this Court, I think doing

15   so on behalf of the same company for the third time might be

16   a bit too much.  And I also recognize that typically, when a

17   company appears before Your Honor for the third time, that

18   typically means that there's some sort of bad news

19   associated with that.

20           However, Your Honor, I'm pleased to state that

21   this is not a bad news story.  It's a good news story, and

22   we do believe that the third time, pardon the pun, will be

23   the charm.  Your Honor, unless you have any questions, any

24   initial questions, I'd like to turn the podium over to my

25   colleagues, who will walk you through the first day

1    pleadings.

2            THE COURT:  That would be fine.  I read the papers

3    carefully, I read the Disclosure Statement and plan, so I

4    have a good sense of the case.

5            MR. PAUL:  Thank you, Your Honor.

6            THE COURT:  Thank you, Mr. Paul.

7            MR. GIORDANO:  Good morning, Your Honor.

8            THE COURT:  Good morning, Mr. Giordano.

9            MR. GIORDANO:  For the record, I'm Brad Giordano

10   with Kirkland & Ellis appearing on behalf of the Debtors.

11           THE COURT:  Yes.

12           MR. GIORDANO:  I'd like to take a quick moment and

13   echo something Mr. Paul said.  We would like to thank Mr.

14   Fox and the United States Trustee's Office.  We've been

15   working with them over the course of the past week, and I

16   think, with potentially one exception, we have resolved all

17   the issues for the -- all the issues on the relief we're

18   asking for today.

19           THE COURT:  All right.  And I'll decide the other

20   one.

21           MR. GIORDANO:  As a couple housekeeping matters --

22           THE COURT:  Yes.

23           MR. GIORDANO:  -- we have copies of the various

24   proposed forms of order.  I can bring them up to you?

25           THE COURT:  Please do, yes.  Yes, thank you, Mr.

1   Giordano.  If you'll approach, I'll have those in front of

2   me.  Thank you, sir.  Thank you.

3            MR. GIORDANO:  And those are in the order that we

4   proposed to tackle the various items on the agenda today.

5            THE COURT:  Very good.

6            MR. GIORDANO:  The second housekeeping matter, Mr.

7   Paul introduced Mr. Hede, who's our First Day Declarant --

8            THE COURT:  Yes.

9            MR. GIORDANO:  -- he's in the Courtroom and

10  available for cross-examination.  We'd like to move his

11  declaration into evidence.

12           THE COURT:  All right.  Does anyone have any

13  opposition to admitting Mr. Hede's declaration into

14  evidence?  Hearing no one, it is admitted as Debtor's

15  Exhibit 1.

16           MR. GIORDANO:  Thank you, Your Honor.

17           THE COURT:  Yes.

18           MR. GIORDANO:  The first item on the agenda is

19  Docket No. 3 and Agenda Item No. 3, our motion for joint

20  administration of the Chapter 11 cases.  We think that this

21  is fairly standard relief and we'd ask the Court to enter

22  the proposed form of order.

23           THE COURT:  I will be pleased to do so unless

24  anyone has any objection.  All right, hearing none, I will

25  sign.

1            MR. GIORDANO:  Your Honor, one administrative

2     issue that --

3            THE COURT:  Yes?

4            MR. GIORDANO:  -- is not addressed directly in

5     that motion, but I want to make sure that you're comfortable

6     with is, as I'm sure you're aware, there's an open

7     SuperMedia case from 2013.

8            THE COURT:  Yes, I am aware.

9            MR. GIORDANO:  We talked with Mr. Fox and would

10    propose to keep that docket open for purposes of resolving

11    the open adversary there --

12            THE COURT:  Okay.

13            MR. GIORDANO:  -- and all other items would be

14    filed in the new -- on the new docket.

15            THE COURT:  Excellent, that works for me.  Mr.

16    Fox, that's fine with you, sir?

17            MR. FOX:  Yes, it is, Your Honor.

18            THE COURT:  All right, good.

19            MR. GIORDANO:  Okay.  Thank you, Your Honor.  The

20    next item I'd like to address is our Creditor matrix motion,

21    which is actually the only order that you should see that

22    has a redline attached to it.

23            THE COURT:  Okay.

24            MR. GIORDANO:  And I believe that this is the one

25    remaining item that we have to resolve with the United

1    States Trustee's Office.  Your Honor, it's a fairly standard

2    Creditor matrix motion and what it purports to do, we have

3    13 Debtors and we'd like to save time and expense --

4              THE COURT:  Yes.

5              MR. GIORDANO:  -- and consolidate the matrices.

6    The one issue is that we received a notice from the clerk's

7    office last night that asked us to seek specific authority

8    from Your Honor to redact the addresses for current and

9    former employees.  We view putting those addresses on -- in

10   a public forum exposes them to security, privacy risk and

11   we'd ask to be allowed to do that in our current form of

12   order.  I believe the United States Trustee would prefer us

13   not to do that.

14             THE COURT:  Would prefer you to include the

15   addresses?

16             MR. GIORDANO:  Yes, Your Honor.

17             THE COURT:  Okay.

18             MR. GIORDANO:  So I won't speak for Mr. Fox, but

19   we would ask, given that we don't -- all those individuals

20   would receive notification of appropriate pleadings, to keep

21   those individuals redacted -- the private information

22   redacted so we don't expose them to any unnecessary security

23   risk.

24             THE COURT:  All right.  I certainly understand

25   your argument.  Mr. Fox, good morning.

1          MR. FOX:  Good morning, Your Honor.  May it please

2     the Court, Tim Fox on behalf of the United States Trustee.

3     So, this happens to be the only open issue for the entire

4     hearing and we apologize for bringing it up, but this has

5     been an issue that's kind of been percolating in the

6     background in this jurisdiction for a couple of years and

7     has only recently sort of risen to a level that's attracting

8     attention.  We understand the concerns that the Debtors are

9     raising and in this day and age, we understand that there

10    can be a problem with having such publicly available

11    information, however, it's not clear that under the Code and

12    the Bankruptcy rules that this type of relief is necessary

13    under the circumstances that are presented here.  While

14    there is a potential risk, it doesn't seem to be the

15    specific and identifiable risk that § 107(c) and 18 U.S.C. §

16    1028(d) seem to isolate for such relief.

17          One instance that my office is aware where this

18    relief was sought and was granted by the Court was the Blue

19    Hippo case a number of years ago.

20          THE COURT:  Yes.  Yes.

21          MR. FOX:  And in that instance, you had State

22    Attorneys General coming to Court to ask for that specific

23    relief to prevent subsequent abuse of fraud victims that

24    would have otherwise been included in the publicly filed

25    information.  Here, while we understand that the employees'

1   addresses and information is private to them, we think that

2   they are in the same footing as any other Creditors of the

3   bankruptcy estate and should be treated similarly, absent

4   specific identifiable harm that would come to them from the

5   publication of that information.  If Your Honor has any

6   questions, I'm happy to try to address those, but I think

7   that's the crux of our argument is that they should be

8   treated the same as any other Creditor.  We're not presented

9   with facts that demonstrate that they need this protection

10  at this juncture.

11            THE COURT:  All right.

12            MR. FOX:  Thank you.

13            THE COURT:  Thank you, Mr. Fox.  Well, I think,

14  that in the present day, with the abuse of private

15  information, that these addresses ought to be redacted, and

16  so, you know, I just think that individuals whose only

17  position is to have been former employees, for example,

18  ought not to have their home addresses listed publicly.  I

19  think that that is -- creates a possibility of abuse and so,

20  I am going to grant the order as you've required, Mr.

21  Giordano.

22            MR. GIORDANO:  Thank you, Your Honor.  And as Mr.

23  Fox said, I think that is the balance of open issues, so

24  we'd like to turn next to Item 15 on the agenda --

25            THE COURT:  Yes.

1              MR. GIORDANO:  -- Docket No. 17, which is our

2    schedule -- Disclosure Statement scheduling motion.

3              THE COURT:  All right.

4              MR. GIORDANO:  And you know, specifically, we're

5    looking to request entry of an order setting a plan

6    objection deadline, a joint confirmation and Disclosure

7    Statement approval hearing and approval of the form of the

8    confirmation notice and our solicitation procedures and plan

9    objection procedures.

10             THE COURT:  Okay.

11             MR. GIORDANO:  Your Honor, I know in the motion,

12   we had asked for July 15th as a potential time for a joint

13   hearing, but we talked with your Chambers and I believe July

14   11th may work better for Your Honor.

15             THE COURT:  I can do July 15th.  Would you still

16   prefer that date?  Or --

17             MR. GIORDANO:  Yes, Your Honor.  I think that

18   would be -- that would be good if we could do July 15th.

19             THE COURT:  All right, let's do July 15 at 10:00.

20             MR. GIORDANO:  Yes, Your Honor.

21             THE COURT:  All right, I don't know if that

22   requires some changes to the order or if there's a blank for

23   me to fill in.  Let's see.

24             MR. GIORDANO:  I believe there's a blank.

25             THE COURT:  Okay.  Good, yes.  And in fact, you

1    had July 15.

2              MR. GIORDANO:  Oh, it was in the -- it was in the

3    order?

4              THE COURT:  Yes.

5              MR. GIORDANO:  Apologies.

6              THE COURT:  That's all right.

7              MR. GIORDANO:  All's well that ends well on that.

8              THE COURT:  That's right.  So we'll do July 15 at

9    10:00 AM.

10             MR. GIORDANO:  Okay.

11             THE COURT:  I have reviewed the Disclosure

12   Statement.  I certainly think it provides more than adequate

13   information, but I don't know if anyone else wishes to be

14   heard on the Disclosure Statement.  All right, hearing no

15   one, I am going to sign the order.

16             MR. GIORDANO:  Thank you, Your Honor.  And we

17   would also propose, I believe it's in the order, but --

18             THE COURT:  Yes.

19             MR. GIORDANO:  -- June 17th as the plan objection

20   deadline.

21             THE COURT:  Yes.

22             MR. GIORDANO:  Okay.

23             THE COURT:  Let me ask you this.  Could we make it

24   June 20?  Would that create a problem?

25             MR. GIORDANO:  I don't believe so.

1           THE COURT:  It's still a sufficient amount of time

2      and it gives you a little bit of leeway on service and the

3      like.

4           MR. GIORDANO:  I don't think that would be a

5      problem, Your Honor.

6           THE COURT:  Okay.  All right, I'll make that

7      change.  I don't see -- I see the objection is defined.  Is

8      that -- does it appear somewhere else?

9           MR. GIORDANO:  It appears in the motion.

10          THE COURT:  Okay.  All right.  All right, then

11     I'll sign the order and I will -- June 20, okay.

12          MR. GIORDANO:  And our notice of the confirmation

13     hearing we'll also send out the objection deadline.

14          THE COURT:  Okay.  That's done.  All right, I

15     signed the order.

16          MR. GIORDANO:  Thank you, Your Honor.

17          THE COURT:  Yes, Mr. Giordano.

18          MR. GIORDANO:  The last item that I will be

19     addressing on the agenda is our motion for use of cash

20     collateral --

21          THE COURT:  Yes.

22          MR. GIORDANO:  -- at Docket No. 13, and I'm

23     pleased to say that I'm standing up here with sign-off from

24     the company, the lenders, the agents, and I believe the

25     United States Trustee's Office have all said that the

1    proposed form of order is acceptable to them.  Again, I want

2    to thank Mr. Fox for his time and attention on that -- on

3    this matter.  And Your Honor, the Debtors have approximately

4    $145 million dollars in cash as of the petition date,

5    substantially all of which constitutes cash collateral

6    under, therefore, credit facilities.  Use of cash collateral

7    in this case is going to be subject to a budget --

8              THE COURT:  Yes.

9              MR. GIORDANO:  -- which was attached to the

10   motion, and will be tested on a total receipts basis and a

11   total operating disbursements basis, as defined in that

12   budget.  The Debtors are providing the lenders with an

13   adequate protection package that includes replacement liens

14   on the Debtors' property, substantially all of which are --

15   is already encumbered, I should say.  Super priority claims,

16   subject to a standard market carve-out.  Additionally, we're

17   going to provide periodic cash payments, subject to minimum

18   liquidity thresholds to fund the cases and provide the

19   proposed distributions under the plan.

20             THE COURT:  Yes.

21             MR. GIORDANO:  And then professionals' fees and

22   expenses for the pre-petition secured parties and standard

23   information rights.

24             THE COURT:  And the default provisions are the

25   normal -- I've read those and those are fine.

1          MR. GIORDANO:  Yes, Your Honor.  They provide

2     opportunity for us to get in front of the Court, should

3     anything go awry.

4          THE COURT:  Exactly, yes.

5          MR. GIORDANO:  We think the order, under the

6     circumstances of these cases, is consistent with Delaware

7     practice and appropriate.  Happy to answer any questions you

8     might have, Your Honor.  Otherwise, we'd ask that you enter

9     the proposed form of order.

10          THE COURT:  All right.  Does anyone else wish to

11     be heard on the cash collateral motion?  Hearing no one, I

12     do not have any questions.  It did meet my approval as well,

13     and I'll be pleased to sign the order.

14          MR. GIORDANO:  Thank you, Your Honor.  At this

15     time, I'd like to cede the podium to my colleague, Ryan

16     Hehner --

17          THE COURT:  All right.

18          MR. GIORDANO:  -- for the rest of the agenda.

19          THE COURT:  Thank you.  Thank you, Mr. Giordano.

20     Good morning.

21          MR. HEHNER:  Good morning, Your Honor.  Excuse me.

22     For the record, Ryan Hehner of Kirkland & Ellis, proposed

23     counsel to the Debtors and Debtors-In-Possession.  Your

24     Honor, I'd like to reiterate the comments of my colleagues,

25     thanking you for accommodating us, thanking the Office of

1    the U.S. Trustee for their accommodations over the past week

2    or so.

3              THE COURT:  They work very hard, don't they?

4              MR. HEHNER:  Absolutely.  Absolutely.

5              THE COURT:  Yes, they do.

6              MR. HEHNER:  And it's due in large part to the

7    industriousness of Mr. Fox that I have nothing to show you

8    today in the way of redlines --

9              THE COURT:  Okay.

10             MR. HEHNER:  -- the requests -- requests of relief

11   that I'll be speaking about here is in the form that was

12   attached to the motions that were filed a few days ago.  If

13   I may, Your Honor, I'd simply like to take the motions --

14   the remaining motions, in the order that they appear on the

15   agenda.

16             THE COURT:  All right, Mr. Hehner, that's fine.

17             MR. HEHNER:  And one note, one preliminary note

18   before I get started here.  I'll note that recently, the

19   proposed claims agent of the Debtors, Epiq, filed affidavits

20   of service with respect to each of the motions that are

21   before you today --

22             THE COURT:  Yes.

23             MR. HEHNER:  -- showing proper service on the

24   parties in interest on May 17th.

25             THE COURT:  Absolutely.

1           MR. HEHNER:  So, Your Honor, Item No. 4 on the

2    agenda is the application to retain Epiq, who I just

3    mentioned, as the Debtors' Notice and Claims Agent.  This

4    application follows local practice and protocol.  Pre-

5    petition, the Debtors reviewed competitive bids from three

6    very highly qualified Notice and Claims Agents and have

7    chosen Epiq.  I'll note that the application was supported

8    by the declaration of Ms. Kate Mayhew, who is the Senior

9    Director of Consulting of Epiq, and unless there are any

10   objections, we request that you enter that declaration into

11   evidence.

12          THE COURT:  All right, any objections?  Hearing no

13   one, I have signed the order, Mr. Hehner.

14          MR. HEHNER:  Thank you very much, Your Honor.

15   Moving right along, then, to Item No. 5, which is the

16   Debtors' cash management motion.  The Debtors use

17   approximately 31 bank accounts across four banks.  This is

18   largely the same cash management system that has been in

19   place since 2009, even accounting for the 2013 merger, it's

20   changed very little and the Debtors feel it's a highly

21   efficient -- it is somewhat unique, given the company's four

22   silo structure, but it has worked very well for the Debtors.

23   I'll note that, although the Debtors do not believe that §

24   345 applies to any of the Debtors' accounts and there will

25   be no investment activity during the pendency of these

1    cases, the proposed order does request a waiver of that

2    section, simply out of abundance of caution.

3            THE COURT:  Yes.

4            MR. HEHNER:  And unless Your Honor had any

5    questions, we're not aware of any objections to this

6    requested relief, and we request that you enter the order.

7            THE COURT:  All right, I'll be pleased to sign the

8    order, and I recognize that Rule 6003 is met, immediate and

9    irreparable harm in the absence of the relief requested, and

10   I will sign the order now.  This is interim relief.

11           MR. HEHNER:  Correct.

12           THE COURT:  And I think we have a final hearing on

13   July -- I'm sorry, on June 13.

14           MR. HEHNER:  That is correct, Your Honor, if that

15   date works for you.

16           THE COURT:  Let's move it to 1:00, by the way.  I

17   think we had it on for 2:00 or 3:00 and that's a little bit

18   late in the day in case there are any problems or you have

19   additional motions that you wish to bring, and that sort of

20   thing.  So, is 1:00 acceptable?

21           MR. HEHNER:  Yes, Your Honor.

22           THE COURT:  Okay.

23           MR. HEHNER:  And thank you for signing that order.

24   I do have one request, if I may.

25           THE COURT:  Yes.

1          MR. HEHNER:  It comes from the Debtors and their

2     banks to return -- turn back on the spigot, so to speak.  It

3     would be very helpful for the Debtors if there's any way to

4     potentially expedite the docketing of that order.  I

5     recognize there are certain administrative functions that

6     need to take place no matter what, to get that done, but if

7     there's anything that can be done, it would be greatly

8     appreciated by the Debtors.

9          THE COURT:  We will get it right on.

10          MR. HEHNER:  We appreciate that.

11          THE COURT:  It will be right on the docket.

12          MR. HEHNER:  Thank you very much, Your Honor.

13          THE COURT:  You bet.  And objections, let's see,

14     June 11?  June 3?  It's a week ahead of time.

15          MR. HEHNER:  That's fine, Your Honor.

16          THE COURT:  Okay.

17          MR. FOX:  Your Honor?

18          THE COURT:  Yes, Mr. Fox?

19          MR. FOX:  If it's June the 13th, should it be June

20     the 6th or --

21          THE COURT:  It's -- oh, it's June 13th, excuse me.

22     I was looking at the next date.  June 13, so June 6th, yes,

23     thank you, Mr. Fox.  I appreciate that.  Good.  I have

24     signed -- I am signing the order, Mr. Hehner.

25          MR. HEHNER:  Thank you very much, Your Honor.

1            THE COURT:  All right.

2            MR. HEHNER:  The next item on the agenda --

3            THE COURT:  And that'll go on early.

4            MR. HEHNER:  Thank you very much, Your Honor.

5    Item No. 6 on the agenda is the Debtors' customer programs

6    motion.

7            THE COURT:  Yes.

8            MR. HEHNER:  The Debtors do have many loyal

9    customers, mostly small and medium-sized businesses, many of

10   which do have ready alternatives, so to retain those

11   customers, to attract new customers, to sustain goodwill,

12   the Debtors have implemented a number of customer programs

13   that they believe are critical to their reorganization

14   efforts, and in many ways, this -- the programs are

15   substantially similar to those that Your Honor approved in

16   connection with the 2013 bankruptcy.

17           THE COURT:  Yes.

18           MR. HEHNER:  The Debtors are seeking to honor

19   their obligations -- pre-petition obligations, under these

20   programs as well as continue them in the ordinary course,

21   and I'll note that, by and large, we're talking about non-

22   cash obligations for the pre-petition obligations here, so

23   in many ways, confidence and comfort is really the name of

24   the game here today, not cash out the door.  So unless Your

25   Honor had any questions, we're not aware of any objection

1    and we request that you enter the order.

2              THE COURT:  All right.  Does anyone wish to be

3    heard on this motion?  I certainly recognize the need and

4    the need for normalcy as much as possible in a bankruptcy

5    setting, and I will be pleased to sign this order, Mr.

6    Hehner.

7              MR. HEHNER:  Thank you very much.

8              THE COURT:  All right, signed.

9              MR. HEHNER:  Thank you.  Proceeding right along to

10   Item No. 7 --

11             THE COURT:  Yes.

12             MR. HEHNER:  -- which is the Debtors' general

13   unsecured claims motion, or what's commonly referred to as

14   an all trade motion.

15             THE COURT:  Yes.

16             MR. HEHNER:  As Mr. Giordano mentioned earlier,

17   the Debtors have solicited acceptances from their lenders

18   with respect to a Chapter 11 plan that is going to pay

19   allowed trade and note and general unsecured claims in full

20   in the ordinary course, and all the Debtors are seeking to

21   do through this motion is mirror that plan treatment.  I

22   will note that there is one category of claims that will be

23   paid pursuant to this motion that we've labeled: "Legal

24   Operations, Financial and Human Resources."  The majority of

25   vendors who are going to be paid under that category would

1   fall into the operations category.  There are some

2   professionals in that category, generally law firms, and at

3   the request of the U.S. Trustee, I'd like to represent for

4   the record that the claims that would be paid under this

5   motion for professionals relate to -- do not relate to

6   ongoing matters for which the Debtors would seek to retain

7   those professionals as ordinary course professionals or

8   otherwise.  This is for completed litigation, completed

9   matters, for which there happens to be outstanding

10  obligations.  The Debtors would obviously reserve the right

11  in the future to retain those professionals if necessary --

12          THE COURT:  That's right.

13          MR. HEHNER:  -- but I wanted to make that

14  representation.

15          THE COURT:  All right, thank you, Mr. Hehner.  Mr.

16  Fox, does that meet with your request?

17          MR. FOX:  Yes it does, Your Honor.

18          THE COURT:  All right.  With that, I think the

19  motion certainly satisfies Rule 6003 and I'll be pleased to

20  sign the order.

21          MR. HEHNER:  Thank you very much, Your Honor.

22          THE COURT:  All right.

23          MR. HEHNER:  All right, Item No. 8 on the agenda

24  deals with everyone's favorite topic of taxes.

25          THE COURT:  Yes.

1          MR. HEHNER:  As I'm sure you're aware, in the

2    ordinary course, the Debtors incur various taxes and fees.

3          THE COURT:  A lot of taxes.

4          MR. HEHNER:  That is correct, Your Honor.  Today,

5    they're seeking only interim relief with respect to a small

6    number of the taxes and fees that will come due during the

7    interim period.  The Debtors believe that inability to

8    satisfy these obligations could clearly result in immediate

9    and irreparable harm, so unless Your Honor has any

10   questions, we're unaware of any objections and would request

11   entry of an order.

12         THE COURT:  All right.  Mr. Hehner, I agree that

13   this -- in the absence of this relief, there would be

14   immediate and irreparable harm to the Debtors and I'll be

15   pleased to sign the order.

16         MR. HEHNER:  Thank you very much.

17         THE COURT:  And again, I'm filling in the final

18   hearing date and the objection deadline of June 6.

19         MR. HEHNER:  We appreciate that.

20         THE COURT:  All right.  Done.

21         MR. HEHNER:  Okay, thank you.  Moving on from

22   taxes to insurance.  This is Item No. 9 on the agenda.  The

23   Debtors maintain over 20 insurance policies in the ordinary

24   course.  They do not have any premium financing agreements.

25   The Debtors -- excuse me -- do not believe that they have

1    any outstanding pre-petition obligations related to their

2    insurance, but out of an abundance of caution, have

3    requested to pay any such obligations, subject to a cap

4    agreed to with the United States Trustee.

5            THE COURT:  That's $100,000?  Is that the cap?

6            MR. HEHNER:  That is correct, Your Honor

7            THE COURT:  Yes.

8            MR. HEHNER:  The Debtors believe it's absolutely

9    critical to maintain insurance, and in fact, we would

10   acknowledge its required under the United States Trustee

11   guidelines.  We're unaware of any objections and, barring

12   any questions, would ask you to enter an order.

13           THE COURT:  I am doing so because it obviously is

14   a requirement and the $100,000 cap certainly, I think,

15   satisfies the company's needs.

16           MR. HEHNER:  Thank you very much.

17           THE COURT:  All right, that's been signed, Mr.

18   Hehner.

19           MR. HEHNER:  Much appreciated.  Item No. 10 on the

20   agenda is the Debtors' equity trading program.

21           THE COURT:  Yes.

22           MR. HEHNER:  Actually trading motion.  The Debtors

23   believe they have approximately $317 million dollars' worth

24   of net operating losses, which, at a combined State and

25   Federal tax rate of approximately 40 percent, means that

1   there's about $127 million dollars of value on the table

2   that -- as described in the motion, could be put in jeopardy

3   by certain equity trading.  By this motion, which is, again,

4   requesting only interim relief at this time --

5              THE COURT:  That's right.

6              MR. HEHNER:  -- and I would stress is simply

7   procedural and is entirely consistent with procedures that

8   are regularly approved by this Court and other Courts in

9   this district, the Debtors would seek to implement those

10  procedures on an interim basis.  As the motion notes, this

11  would apply in the first instance to what we've defined as

12  substantial holders.  There's only three of which that the

13  Debtors were aware of at this time.

14             THE COURT:  4.5 percent holdings, is that correct?

15             MR. HEHNER:  It's approximately 4.5 percent,

16  that's correct.

17             THE COURT:  Yes.

18             MR. HEHNER:  And unless you had any further

19  questions, Your Honor, we're unaware of any objections, and

20  would request entry of an order.

21             THE COURT:  All right.  Does anyone wish to be

22  heard?  I will sign the order.  I recognize the harm that

23  could result without it, and I'll be pleased to sign the

24  order.  There we go.  All right, Mr. Hehner, I've signed.

25             MR. HEHNER:  Terrific, thank you.  The next item

1    up would be the Debtors' utility motion.

2              THE COURT:  Yes.

3              MR. HEHNER:  Your Honor, the Debtors are proposing

4    two weeks of adequate insurance.  That amounts to about

5    $390,000 that would be set aside in a segregated account for

6    the Debtors' approximately 35 utility providers.  These

7    procedures that we propose are entirely consistent with the

8    procedures that are regularly approved in this district, and

9    which we think have worked very well, providing utilities a

10   chance to be heard, but not unnecessarily tying up needed

11   cash.

12             THE COURT:  Right.

13             MR. HEHNER:  Only interim relief is requested

14   today.  If you have any questions, I'd of course be happy to

15   answer them.  Otherwise, we request an order.

16             THE COURT:  All right.  Does anyone wish to be

17   heard?  Hearing no one, I will sign the order, and again, it

18   will be June the 13th is our final hearing date.

19             MR. HEHNER:  Thank you very much.

20             THE COURT:  At 1:00 PM.  Okay.  If I'd known it

21   was going to be this peaceful, I would have scheduled it for

22   a little bit later.

23             (Laughter)

24             THE COURT:  All right.

25             MR. HEHNER:  Okay, Your Honor, last but certainly

1    far from least is the Debtors' wages motion --

2              THE COURT:  Yes.

3              MR. HEHNER:  -- for the employees, the backbone of

4    the company.

5              THE COURT:  Absolutely.

6              MR. HEHNER:  The company employs a little over

7    3,000 employees and provides them a fairly typical suite of

8    benefits, health insurance and the like.  I'll note that

9    importantly, the Debtors are not seeking to make any

10   payments on account of incentive program, the severance

11   payments, director obligations, if any, pursuant to this

12   interim order.  Any such relief would be requested pursuant

13   to the final order and with respect only to non-insiders at

14   that time.  None of the requested relief would be subject to

15   § 503(c) of the code, and importantly, under this interim

16   order, none of the employees would be receiving payments

17   that would be in excess of the § 507 priority cap --

18             THE COURT:  Right.

19             MR. HEHNER:  -- inclusive of salary and the other

20   things that are considered under § 507.  So Your Honor,

21   we're, again, unaware of any objections to this proposed

22   relief.  Happy to answer any questions or otherwise would

23   request entry of an order.

24             THE COURT:  All right, thank you, Mr. Hehner.

25   This is important relief, obviously, and very necessary and

1   there would be immediate and irreparable harm to the Debtors

2   were the Court not to grant the relief requested.

3           MR. HEHNER:  Yes, Your Honor, we believe so.

4           THE COURT:  So -- yes.  All right, I signed that

5   order.

6           MR. HEHNER:  Thank you very much, Your Honor.

7   That concludes my very peaceful portion of the agenda.

8           THE COURT:  Yes.

9           MR. HEHNER:  I'd like to turn it over briefly to

10  my colleague, Mr. Giordano.

11          THE COURT:  Thank you, Mr. Hehner.

12          MR. HEHNER:  Thank you.

13          THE COURT:  Mr. Giordano?

14          MR. GIORDANO:  Your Honor, I did have one small

15  administrative matter I just wanted to note on the record.

16          THE COURT:  Yes, please.

17          MR. GIORDANO:  We did receive some technical

18  comments from counsel to the indentured Trustee on our plan.

19  These were similar to other comments that we've added to

20  plans before, which include adding them into the scope of

21  the releases and providing a mechanism for their fees.  I

22  wanted to let Your Honor know that we'll be filing that

23  modified version of the plan on the docket later today.

24          THE COURT:  Okay, wonderful.

25          MR. GIORDANO:  With that said, we really

1    appreciate the Court's time this morning.  I believe we're

2    through everything on the agenda, and we'll see you in about

3    a month.

4            THE COURT:  All right.  The papers were excellent.

5    It made it easy to review, and I appreciate that very much,

6    and I appreciate everyone's cooperation here, and thanks to

7    the U.S. Trustee's office for your hard work that I know is

8    hard work, in reviewing the papers, and we'll be back here

9    on June the 13th.

10           MR. GIORDANO:  Thank you, Your Honor.

11           THE COURT:  Thank you, everyone.  We'll stand in

12   recess.  Good day to you all, safe travel.

13

14

15                        * * * * *

16

17

18

19

20

21

22

23

24

25

Page 41

1                         I N D E X

2

3                         RULINGS

4     DESCRIPTION                         PAGE        LINE

5

6     Joint Administration Approved        17          24

7

8     Disclosure Statement Approved        23          15

9

10    Plan Objection Deadline of June 20th 24          11

11    Approved

12

13    Cash Collateral Motion Approved      26          13

14

15    Application to Retain Epiq Approved  28          12

16

17    Debtors' Cash Management Motion Approved  29     10

18

19    Debtors' Customer Programs Maintenance  32       15

20    Motion Approved

21

22    Debtors' All Trade Motion Approved   33          20

23

24    Tax Plan Approved                    34          15

25

Page 42

1    Insurance Plan Approved                     35         17

2

3    Debtors' Equity Trading Program Approved    36         22

4

5    Wages Motion Approved                       39          4

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

I, Sonya Ledanski Hyde, certified that the foregoing

transcript is a true and accurate record of the proceedings.

**Sonya Ledanski Hyde**

Digitally signed by Sonya Ledanski Hyde
DN: cn=Sonya Ledanski Hyde, o, ou,
email=digital1@veritext.com, c=US
Date: 2016.06.09 12:47:34 -04'00'

Sonya Ledanski Hyde

Veritext Legal Solutions

330 Old Country Road

Suite 300

Mineola, NY 11501

Date:  May 18, 2016