**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| DEX MEDIA, INC., *et al.*,[1] | Case No. 16-11200 (KG) |
| Debtors. | (Jointly Administered) |
| DEX MEDIA, INC., | |
| Plaintiff | |
| vs. | Adversary Proceeding |
| YELLOW PAGES PHOTOS, INC., | Adv. No. |
| Defendant. | |

**ADVERSARY COMPLAINT**

Debtor Dex Media, Inc. ("Dex Media"), by and through its undersigned attorneys, hereby files this Adversary Complaint pursuant to Federal Rule of Bankruptcy Procedure 7001 and states as follows:

**NATURE OF THE CASE**

1. Dex Media commences this adversary proceeding to object to Yellow Pages Photos, Inc.'s ("YPPI") latest maneuver in its serial effort to extort money from SuperMedia LLC ("SuperMedia"), and now its parent, Dex Media, Inc. over the use of fifty CDs of stock photographs that SuperMedia licensed more than fifteen years ago. After three years of

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, include: Dex Media, Inc. (0040); Dex Media East, Inc. (5763); Dex Media Holdings, Inc. (9762); Dex Media Service LLC (9647); Dex Media West, Inc. (7004); Dex One Digital, Inc. (9750); Dex One Service, Inc. (0222); R.H. Donnelley APIL, Inc. (6495); R.H. Donnelley Corporation (2490); R.H. Donnelley Inc. (7635); SuperMedia LLC (6092); SuperMedia Inc. (5175); and SuperMedia Sales Inc. (4411). The location of the Debtors' service address is: 2200 West Airfield Drive, P.O. Box 619810, DFW Airport, Texas 75261.

litigation, two trials, and voluminous motion practice, this Court entered its final decision on YPPI's claims against SuperMedia on April 4, 2016.  Less than a month later, YPPI simply repackaged those claims and tried again, this time suing Dex Media in the Middle District of Florida.  Now, for the first time (and in direct contradiction to its earlier representations), YPPI contends that (1) SuperMedia has no rights under its License with AdMedia Systems, Inc. to use the Licensed Images in any way, and (2) that the SuperMedia print advertisements that YPPI showed this Court at length during the November 2015 damages trial now represent infringing uses of YPPI's images by Dex Media.

2.      YPPI's "new" claims are just a repackaging of the copyright infringement claims this Court has already heard and decided.  As the Court may recall, YPPI brought claims for breach of contract and copyright infringement against SuperMedia based on SuperMedia's alleged "transfer" of YPPI's stock images to third parties, including Dex Media.  At the April 2014 trial on YPPI's administrative expense claim, YPPI argued that, by virtue of the merger that formed Dex Media, SuperMedia had transferred YPPI's images to Dex Media.  YPPI further claimed that Dex Media had purportedly used those images in "thousands of infringing videos" made by bieMedia, and tried to lay the blame for these advertisements at SuperMedia's feet.  The Court rejected YPPI's claim and held that SuperMedia did not transfer YPPI's images to Dex Media or commit any other "tortious act" with regard to Dex Media.  Months later, SuperMedia discovered that the so-called "infringing videos" produced by bieMedia were actually licensed uses of YPPI's images as YPPI itself had licensed its images to bieMedia in 2006.  On September 3, 2015, the Court concluded that YPPI, and its principal Trent Moore, had committed fraud on the Court with respect to the bieMedia videos and "forcefully testified

2

falsely under oath" that YPPI had never licensed its images to bieMedia and ASEC. [Case No. 13-10546-KG, D.I. 366 at 4].

3.    At the November 2015 damages trial, YPPI introduced evidence of SuperMedia directories that contained print advertisements with YPPI's images. At the trial, YPPI repeatedly acknowledged that these print ads were not "infringing uses" of YPPI's images. Instead, YPPI introduced these print ads in a futile attempt to show that SuperMedia was making millions of dollars in revenue from the use of YPPI's images. In the end, the Court awarded YPPI less than one percent of the damages it sought against SuperMedia. In addition, the Court rejected YPPI's breach of contract claims altogether, finding that YPPI had "furtively" and "actively concealed" from SuperMedia and the Court that it was not a party to the License.

4.    Evidently unhappy with this Court's rulings, YPPI has now filed a copycat complaint against Dex Media, SuperMedia's ultimate parent and a non-operating holding company, in a new court before a new judge. This attempt at a do-over fails. For at least the reasons set forth herein, YPPI should be precluded from bringing any claims against Dex Media for the use of YPPI's images.

## JURISDICTION

5.    This is an adversary proceeding brought pursuant to Federal Rule of Bankruptcy Procedure 7001.

6.    This Court has jurisdiction over the claims raised in this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157, and the *Amended Standing Order of Reference* dated February 29, 2012, from the United States District Court for the District of Delaware.

7.    Count III of this adversary proceeding is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order and judgment consistent with Article III of the United States Constitution. Counts I and II of this adversary proceeding are

non-core proceedings.  In the event it is determined that the Court, absent the consent of the parties, cannot enter a final order and judgment consistent with Article III of the Constitution in this adversary proceeding, Dex Media consents to the Court's entry of a final order and judgment.

## THE PARTIES

8.      Plaintiff Dex Media, Inc., debtor in the above-captioned Chapter 11 proceeding, is a Delaware limited liability company having its principal place of business at 2200 West Airfield Drive, PO Box 619810, DFW Airport, Texas 75261.  Dex Media is a non-operating holding company formed as part of the merger between SuperMedia, Inc. and Dex One Corporation and their respective affiliates.

9.      Defendant Yellow Pages Photos, Inc. ("YPPI") is a Florida corporation having its principal place of business in Riverview, Florida.  YPPI is a former provider of stock images.

## BACKGROUND

**A.      Verizon Directories Corp. obtains an unlimited, perpetual, royalty-free stock image license to YPPI's images "on behalf of itself and all of its affiliates."**

10.      SuperMedia LLC is a subsidiary of Dex Media and provides print, mobile, and Internet advertising to small- and medium-sized businesses.  As part of its business, SuperMedia regularly enters into royalty-free license agreements to use stock images.  Since 2001, SuperMedia has negotiated and entered into such licensing agreements with Getty Images, Jupiter Images, Multi Ad, Photo Valet, and Imagine.

11.      On or about November 12, 2001, SuperMedia's predecessor company, Verizon Directories Corp. ("Verizon Directories"), entered into a Service Contractor Agreement (as amended, the "License") "on behalf of itself *and all of its affiliates*" with a company originally known as Yellow Pages Photos, Inc., ("Old YPPI").  (*See* Ex. A, License at SUPER-053938.)

4

Old YPPI was a provider of stock images that was formed by Trent Moore and incorporated on or about February 24, 2000.

12.     Under the License, Old YPPI provided Verizon Directories with 100 collections of images containing 50 photographs each (the "Licensed Images"). Under the "USE" section of the License, Verizon Directories and its affiliates were free to use these images in any "print, electronic or other medium that may be used by Verizon Directories for publication of directories without limit, ROYALTY FREE." (*Id.* at SUPER053950.) In return, Verizon Directories paid Old YPPI $6,600 for each collection of images, or $660,000 in total.

13.     On November 3, 2006, Old YPPI changed its name to AdMedia Systems, Inc. ("AdMedia"). That same day, Mr. Moore incorporated a new company also named Yellow Pages Photos, Inc. That company is the Defendant, YPPI. Thereafter, AdMedia assigned its copyrights to the licensed images to YPPI. Mr. Moore never told anyone at SuperMedia (or its predecessors) that he had created a second company named "Yellow Pages Photos, Inc." or that AdMedia had assigned its copyrights to YPPI. [Adv. No. 15-50044-KG, D.I. 197 at 3]. Beginning in January 2007, YPPI registered the images licensed to Verizon Directories with the United States Copyright Office in discrete collections of 50 images each.

14.     In 2006, Verizon Directories was spun off into a new public company called Idearc Media Corp. ("Idearc"). Idearc succeeded to Verizon Directories' rights under the License.

15.     In mid-2007, Idearc sought to amend the License to expand the purposes for which the YPPI images could be used and to clarify that Idearc's contractors were authorized "users" of those images. To that end, Idearc and AdMedia executed Amendment Number One to the parties' original License in July 2007. In so doing, confirmed that Verizon Directories (now

Idearc) entered into the License "*on behalf of itself and all of its affiliates*."   (*See* Ex. B, Amendment One at SUPER-053952.)

**B.      Idearc files Chapter 11 bankruptcy, assumes the License, and changes its named to SuperMedia.**

16.      On March 31, 2009, Idearc filed for Chapter 11 bankruptcy relief in the United States Bankruptcy Court for the Northern District of Texas.  The License was scheduled as an executory contract in Idearc's bankruptcy schedules.  Although Idearc sent Mr. Moore notice of its Chapter 11 bankruptcy, neither AdMedia nor YPPI objected to the assumption of the License. Nor did Mr. Moore, AdMedia or YPPI assert any claims against Idearc relating to the License or the Licensed Images.

17.      On December 22, 2009, the Bankruptcy Court for the Northern District of Texas confirmed Idearc's Chapter 11 plan and issued an order assuming the License.  Idearc emerged from bankruptcy as SuperMedia LLC.   Accordingly, SuperMedia and all of its affiliates succeeded to the rights set forth in the License.

**C.      SuperMedia decreases and then discontinues its use of the YPPI images.**

18.      Finding YPPI's outdated images of little utility and poor quality, SuperMedia elected to stop using those images in new print advertisements in 2011.  As this Court has found, "[i]n June 2011, SuperMedia also discontinued the use of YPPI's images in new print advertisements and removed the YPPI image library from its systems."  [Case No. 13-10546-KG, D.I. 220 at 21]; *see also* [Adv. No. 15-50044-KG, D.I. 199 at 16].

19.      Although SuperMedia and all of its affiliates continue to hold the perpetual, unlimited right to use YPPI's images under the License to this day, since 2011, neither SuperMedia nor Dex Media has used any of YPPI's images to create new print advertising products for customers.  In fact, even though it was not required to do so under the License,

SuperMedia undertook an extensive effort to remove YPPI's images from the libraries of certain of its contractors, including Tata, MPS, and ASEC International.

20.     SuperMedia, however, did not force its existing customers to remove YPPI's images from any pre-existing advertising products.  Thus, a number of the Licensed Images have continued to show up in SuperMedia print advertisements after 2011.

> **D.     YPPI sues SuperMedia in this Court for copyright infringement due to alleged "transfers" of the Licensed Images to Dex Media and others who purportedly "used" the images without authorization.**

21.     On March 18, 2013, SuperMedia filed a pre-packaged Chapter 11 bankruptcy in this Court.  SuperMedia's Chapter 11 plan included a merger between SuperMedia's parent company and Dex One Corporation.  Under SuperMedia's Chapter 11 plan, SuperMedia would emerge from bankruptcy as an indirect, wholly owned subsidiary of Dex Media.  The Court approved the plan on April 29, 2013 and the confirmed pre-packaged plan went effective on April 30, 2013.  Notably, Dex Media is a holding company that has no operations and, thus, publishes no advertisements.

22.     On May 30, 2013, YPPI filed a proof of claim in SuperMedia's Chapter 11 proceedings for "breach of license agreement and violation of federal copyright law" (the "Proof of Claim").  (*See* Ex. C, YPPI Proof of Claim.)  That same day, YPPI filed a motion for allowance and payment of an administrative expense claim ("Admin Expense Motion").  [Case No. 13-10545-KG, D.I. 213].

23.     In its Proof of Claim and Admin Expense Motion, YPPI alleged that SuperMedia "violated the transfer restriction set forth in the [License] by transferring the Licensed Images to third parties" and that such transfers permitted those third parties, including Dex Media, to "use" the images without authorization.  (Ex. C, YPPI Proof of Claim ¶ 15; [Case No. 13-10545-KG, D.I. 213 ¶ 19].)  In terms of relief, YPPI sought damages from SuperMedia in excess of

$750,000,000.00 for SuperMedia's breach of the License and violation of federal copyright law, as well as attorneys' fees under the License and Section 505 of the Copyright Act.  (Ex. C, YPPI Proof of Claim ¶ 20.)

24.     On April 9, 2014, the Court commenced a three-day trial on YPPI's Admin Expense Motion.  In the Pre-Trial Order, YPPI stated that its "intended proof" at the April 2014 trial would show that "SuperMedia violated the user restriction in the License, as amended, by *permitting use of the Licensed Images by parties that were neither its employees nor its contractors*."  [Case 13-10546-KG, D.I. 113 at 12].  In particular, YPPI stated that it would prove at trial that "SuperMedia has transferred copies of Yellow Pages' images to a number of unlicensed third-parties without Yellow Pages' knowledge or consent, *and there is evidence of the images being used for at least one unlicensed publisher, SuperMedia's affiliate Dex*."  [Case 13-10546-KG, D.I. 107 at 10; D.I. 131 at 45 ("SuperMedia has also allowed Dex Media to become a user of Yellow Pages' images.")].

25.     At trial, YPPI argued that SuperMedia had transferred the images to Dex Media and the other Dex affiliates because "these companies are actually operating as one, at least in terms of these ad production services."  (*See* April 11, 2014 PM Trial Tr. 32:23-33:17.)  Critically, the only evidence that YPPI offered of Dex Media's purported unauthorized use of the Licensed Images as a result of this alleged transfer were uses in *digital* products, including "thousands of Dex videos [that] contain these YPPI images" produced by bieMedia and a single image that appeared on the Peacock Roofing website.  (*See, e.g.*, April 9, 2016 AM Trial Tr. 15:6-10; April 11, 2016 PM Trial Tr. 34:6-35:3.)  While YPPI had hundreds of samples of SuperMedia print advertisements that contained the Licensed Images, YPPI never suggested at

any point before, during, or after the April 2014 trial that those advertisements constituted infringements of YPPI's copyrights.

26.     On December 29, 2014, the Court entered an order denying YPPI's Admin Expense Motion.  While the Court found that SuperMedia had transferred the Licensed Images to certain contractors in breach of the License prior to SuperMedia's Chapter 11 petition, the Court found that SuperMedia had not engaged in any copyright infringement during the post-petition administrative claim period.  [Case 13-10546-KG, D.I. 220].

27.     On February 11, 2016, YPPI filed a motion for reconsideration of the Court's post-trial opinion denying its Admin Expense Motion.  In its motion for reconsideration, YPPI again argued that SuperMedia had "transferred the Licensed Images to Dex Media" by virtue of the merger and, as such, had "allowed Dex to become a user of YPPI images."  [Case 13-10546-KG, D.I. 271 at 4].  YPPI further claimed that this was evidence of copyright infringement that occurred post-petition and thus its Admin Expense Motion should be granted.

28.     The Court denied YPPI's reconsideration motion.  [Case 13-10546-KG, D.I. 293].  Significantly for the present purposes, the Court held that "the merger . . . did not result in a transfer which would constitute a tortious act" that could have resulted in an infringing use by Dex Media.  (*Id.*)

**E.     The Court holds a second trial on YPPI's pre-petition copyright infringement claims against SuperMedia.**

29.     On January 12, 2015, SuperMedia filed an Adversary Complaint in this Court objecting to YPPI's Proof of Claim for SuperMedia's purported pre-petition infringement and, on January 29, 2015, SuperMedia filed an Amended Complaint.  [Adv. No. 15-50044-KH, D.I. 1, D.I. 5].

30.     Beginning on November 16, 2015, the Court conducted a trial on YPPI's prepetition damages claims against SuperMedia.  During trial, YPPI offered the Court evidence of "hundreds" of SuperMedia print ads containing the Licensed Images.  (*See* Nov. 18, 2016 Trial Tr. 164:20-189:23.)  In particular, Mr. Moore testified that he reviewed 61 directories "out of 1700 plus [directories] this year" and located 530 SuperMedia ads containing the Licensed Images.  (*Id.* at 189:12-190:1.)  YPPI argued that these ads served as evidence of "the value of the images because . . . SuperMedia is using them a lot more than they've been telling the Court."  (*See id*. 170:12-22); *see also* [Adv. No. 15-50044-KG, D.I. 180 at 17].  According to Mr. Moore, SuperMedia was earning millions of dollars in revenue from these print advertisements.  (*See* Nov. 18, 2016 Trial Tr. 189:12-23.)

31.     At trial, YPPI never argued that the print ads constituted an infringing use of the Licensed Images.  To the contrary, YPPI's counsel acknowledged that "we don't dispute, of course, that they license the images and they were allowed to use them in printouts."  (*See* Nov. 16, 2016 Trial Tr. 62:21-23; *see also* Nov. 18, 2016 Trial Tr. 186:20-186:24 ("I'm not saying the uses are infringing.").)  Similarly Mr. Moore testified that "I do not think that the print ad is a violation of the license agreement."  (*Id.* at 269:7-17.)  In fact, Mr. Moore conceded that SuperMedia was permitted to use the Licensed Images in print ads.  (*Id.* at 269:12-14 ("Q. And SuperMedia was allowed to use your images in print ads, correct?  A. Yes, they were.").

**F.     The Court holds that YPPI "actively concealed" that it is not a party to the License and awards YPPI $303,210 in damages.**

32.     On April 4, 2016, the Court handed down its opinion on YPPI's pre-petition claims against SuperMedia.  In its opinion, the Court adopted the "top" end of SuperMedia's expert's proposed damages range and awarded YPPI $303,210 in damages.  The Court further

held that YPPI did not timely register its copyrights, and thus could not seek statutory damages

or attorneys' fees under the Copyright Act.  [Adv. No. 15-50044-KG, D.I. 199].

33.      That same day, the Court also denied YPPI's motion to amend its Proof of Claim

to join AdMedia as a party.  In denying that motion, the Court held that YPPI and Mr. Moore

"actively concealed" the nature of YPPI's relationship with AdMedia from both SuperMedia and

the Court.  [Adv. No. 15-50044-KG, D.I. 197 at 21].  The Court further held that YPPI was not a

party to the License and thus could not enforce the remedies set forth in the License against

SuperMedia, including any right to attorneys' fees.

**G.      YPPI commences a third lawsuit in Florida against Dex Media based on the exact same claims that it has already litigated against SuperMedia.**

34.      On April 29, 2016, less than a month after this Court issued its opinion on YPPI's

Proof of Claim, YPPI sued Dex Media in the United States District Court for the Middle District

of Florida.  (*See* Ex. D, Dex Media Complaint.)

35.      In its Complaint, YPPI seeks to hold Dex Media liable for copyright infringement

of the Licensed Images because Dex Media is allegedly "using" some of the Licensed Images in

print advertisements in phone directories purportedly published by Dex Media.  Once again,

YPPI claims that Dex Media "possesses and is using and displaying some or all of the Licensed

Images, without Plaintiff's permission or approval."  (*Id.* ¶ 49.)  There are at least five different,

independent reasons why these copycat claims against Dex Media fail as a matter of law.

36.      *First*, YPPI has already asserted and lost these claims.  In particular, this Court

has already found that SuperMedia removed the Licensed Images from its systems in 2011,

[Case No. 13-10546-KG, D.I. 220 at 21]; *see also* [Adv. No. 15-50044-KG, D.I. 199 at 16], and

that there was no transfer of the Licensed Images from SuperMedia to Dex Media, [Case 13-

10546-KG, D.I. 293]. YPPI's attempt to re-litigate these same issues is barred by the doctrines of res judicata and collateral estoppel.

37.    *Second*, YPPI is judicially estopped from asserting that these print ads are infringements because YPPI has already conceded that the print ads YPPI has attributed to Dex Media are not infringing uses of the Licensed Images. In its latest Complaint, YPPI claims that Dex Media "began publishing directories at some point after the Effective Date of the Merger in 2013 and today publishes approximately 1,700 directories each year." (*Id.* ¶ 58.) These are the exact same "1,700" directories that YPPI offered as evidence in the November 2016 trial— directories that YPPI and its counsel repeatedly conceded were not infringing uses of the Licensed Images. (*See* November 18, 2016 Trial Tr. 186:20-24 ("I'm not saying the uses are infringing."); *see also* November 18, 2016 Trial Tr. (Timmerman) 167:9-16 ("But the point is these are not being offered to show infringement."); 170:12-22 ("I'm not trying to say these are additional infringement."); 174:3-14 ("[W]e're not offering [that] these are infringements or to quantify anything.").)

38.    *Third*, even if Dex Media were using the Licensed Images, that is expressly contemplated and permitted by the License, which is on behalf of SuperMedia "and all of its affiliates." (Ex. A, License; Ex. B, Amendment One.) To the extent any advertisements in these phone directories represent a use of the Licensed Images by Dex Media (they do not), that is a fully licensed use of the Licensed Images for which SuperMedia has already paid $660,000.

39.    *Fourth*, Dex Media is not "using" the Licensed Images. The print advertisements are SuperMedia products. There is no question that SuperMedia is allowed to use Licensed Images in SuperMedia advertising products. YPPI has conceded as much. (November 18, 2016 Trial Tr. (Moore) 269:7-17 ("Q. And SuperMedia was allowed to use your images in print ads,

correct?  A. Yes, they were.").)  And as this Court has already concluded, SuperMedia LLC

survived the merger as a separate entity with distinct operations.  [Case 13-10546-KG, D.I. 293].

Dex Media is simply the global parent of SuperMedia, Inc. (SuperMedia's parent) and the Dex

One entities.  [Case No. 13-10545-KG, D.I. 3 at Ex. B].  Dex Media, however, is a holding

company that has no independent "operations" and produces no advertising products, so Dex

Media has not "used" the Licensed Images at all, let alone engaged in any copyright

infringement related to such a "use."

       40.    *Fifth*, the crux of YPPI's new claim is that Dex Media could not have the right to

use the Licensed Images because "neither Idearc [] nor its trustee ever took the statutory steps

necessary to assume the Service Agreement in the Idearc Bankruptcy" and as a result "neither

Idearc Media nor SuperMedia possess any use or other rights under the Service Agreement."

(Ex. D, Dex Media Complaint ¶ 38.)  YPPI overlooks the fact that this Court has already decided

on two separate occasions that the License Agreement is *not* executory and, as such, did not have

to be "assumed" for SuperMedia and its affiliates to continue to use the Licensed Images.  [Case

No. 13-10545-KG, D.I. 280 at 9; Case No. 13-10546-KG, D.I. 20 at 2].

## FIRST COUNT

### (Declaratory Judgment)

       41.    Dex Media repeats and re-alleges paragraphs 1 through 40 above.

       42.    A real and existing controversy exists between Dex Media and YPPI concerning

whether YPPI is barred and precluded from bringing any claims against Dex Media regarding the

use of the Licensed Images.  There is also a real and existing controversy as to whether Dex

Media has engaged in copyright infringement with respect to the Licensed Images.

       43.    Accordingly, Dex Media seeks an order declaring that (i) YPPI is precluded from

bringing claims against Dex Media for purported unauthorized use of the Licensed Images; (ii)

Dex Media is an affiliate of SuperMedia's and is authorized to use the Licensed Images per the terms of the License, and (iii) Dex Media has not infringed any of the Licensed Images for any purpose.

## SECOND COUNT

### (Attorneys' Fees and Costs)

44.     Dex Media repeats and re-alleges paragraphs 1 through 44 above.

45.     Federal copyright law states that "[i]n any civil action" relating to copyright infringement, the Court "in its discretion may allow the recovery of full costs by or against any party . . . ." and "may also award a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C. §505.

46.     YPPI's Complaint constitutes a civil action for copyright infringement based on Dex Media's alleged unauthorized use of YPPI's copyrighted materials.

47.     Accordingly, because Dex Media has not infringed YPPI's copyrights, Dex Media seeks an order awarding it the reasonable attorneys' fees and costs that it has incurred, or will incur, in this action.

## THIRD COUNT

### (Objection to YPPI's Claim)

48.     Dex Media repeats and re-alleges paragraphs 1 through 48 above.

49.     On June 24, 2016, YPPI filed a Motion For Relief from Automatic Stay under 11 U.S.C. § 362 in the above-captioned Chapter 11 proceeding.  [Case No. 16-11200-KG, D.I. 245 ("Lift Stay Motion")].  In its motion, YPPI acknowledges that it is "an unsecured creditor in this bankruptcy case" that possesses "general unsecured claims [against Dex Media] that need to be liquidated."  (*Id.* at 1, 3.)

50.     By its Complaint and Lift Stay Motion, YPPI has made a claim on Dex Media's

Chapter 11 estate for payment based on Dex Media's purported infringement of YPPI's

copyrights.

51.     Because Dex Media has not infringed YPPI's copyrights, YPPI's claim is

unenforceable against Dex Media and the property of Dex Media under applicable law.

Accordingly, Dex Media hereby objects to, and seeks an order denying YPPI's claim pursuant to

11 U.S.C. § 502(b)(1).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter an order:

a.      declaring that (i) YPPI is precluded from bringing claims against Dex Media regarding the use of the Licensed Images; (ii) Dex Media is authorized to use YPPI's Licensed Images in advertising products; and (iii) Dex Media has not infringed any of YPPI's copyrights;

b.      granting Dex Media an award of the attorneys' fees and costs that it has incurred, or will incur, in this action;

c.      disallowing with prejudice YPPI's claim against Dex Media's estate; and

d.      granting such other and further relief as the Court deems to be just and equitable.

Dated: July 8, 2016                KIRKLAND & ELLIS LLP
      Wilmington, Delaware        Eric F. Leon, P.C. (*pro hac vice* admission pending)
                                   Kuan Huang (*pro hac vice* admission pending)
                                   601 Lexington Avenue
                                   New York, New York 10022
                                   Telephone:  (212) 446-4800
                                   Facsimile:  (212) 446-4900

                                   - and -

                                   YOUNG CONAWAY STARGATT & TAYLOR,
                                   LLP

                                   /s/ Patrick A. Jackson
                                   Pauline K. Morgan (Bar No. 3650)
                                   Patrick A. Jackson (Bar No. 4976)
                                   Rodney Square
                                   1000 North King Street
                                   Wilmington, Delaware 19801
                                   Telephone:  (302) 571-6600
                                   Facsimile:  (302) 571-1253

                                   *Counsel to Dex Media, Inc.*