## EXHIBIT B

Blackline

01:18917739.1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DEX MEDIA, INC., *et al.*,[1] | ) | Case No. 16-11200 (KG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket Nos. 18, 19, 57, 287, 289, 290** |

**ORDER APPROVING THE DEBTORS'
DISCLOSURE STATEMENT FOR, AND CONFIRMING,
THE DEBTORS' AMENDED JOINT PREPACKAGED CHAPTER 11 PLAN**

The above-captioned debtors (collectively, the "Debtors") having:

a. distributed, on or about May 2, 2016 (i) the *Joint Prepackaged Chapter 11 Plan of Reorganization of Dex Media, Inc. and Its Debtor Affiliates* [Docket No. 18] (as modified, amended, or supplemented from time to time, the "Plan"), (ii) the *Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Reorganization of Dex Media, Inc. and Its Debtor Affiliates* [Docket No. 19] (the "Disclosure Statement"), and (iii) ballots for voting on the Plan to Holders[2] of Claims entitled to vote on the Plan, namely Holders of Class 3 Dex East Credit Facility Claims, Class 4 Dex West Credit Facility Claims, Class 5 RDHI Credit Facility Claims, Class 6 SuperMedia Credit Facility Claims, and Class 7 Subordinated Notes Claims, in accordance with the terms of title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules");

b. commenced, on May 16, 2016 (the "Petition Date"), these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code;

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, include:  Dex Media, Inc. (0040); Dex Media East, Inc. (5763); Dex Media Holdings, Inc. (9762); Dex Media Service LLC (9647); Dex Media West, Inc. (7004); Dex One Digital, Inc. (9750); Dex One Service, Inc. (0222); R.H. Donnelley APIL, Inc. (6495); R.H. Donnelley Corporation (2490); R.H. Donnelley Inc. (7635); SuperMedia Inc. (5175); SuperMedia LLC (6092); and SuperMedia Sales Inc. (4411).  The location of the Debtors' service address is:  2200 West Airfield Drive, P.O. Box 619810, DFW Airport, Texas 75261.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Bankruptcy Code (as defined herein), as applicable. The rules of interpretation set forth in Article I.B. of the Plan apply.

KE 39966019

c.      filed,[3] on May 17, 2016, the Plan and the Disclosure Statement;

d.      filed, on May 17, 2016, the *Debtors' Motion for Entry of an Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Establishing a Plan and Disclosure Statement Objection Deadline and Related Procedures, (III) Approving the Solicitation Procedures, and (IV) Approving the Confirmation Hearing Notice* [Docket No. 17] (the "Scheduling Motion");

e.      filed, on the May 17, 2016, the *Preliminary Declaration of Jane Sullivan on Behalf of Epiq Bankruptcy Solutions, LLC Regarding Service of Solicitation Packages and Tabulation of Ballots Cast on the Joint Prepackaged Chapter 11 Plan of Reorganization of Dex Media, Inc. and Its Debtor Affiliates* [Docket No. 15], which detailed the preliminary results of the Plan voting process in **Exhibit M** attached thereto (the "Preliminary Voting Report");

f.      filed, on May 17, 2016, the *Declaration of Andrew Hede in Support of First Day Motions* [Docket No. 14] (the "First Day Declaration"), detailing the facts and circumstances of the Debtors' Chapter 11 Cases;

g.      filed, on May 18, 2016, the *Notice of Technical Modifications to Joint Prepackaged Chapter 11 Plan of Reorganization of Dex Media, Inc. and Its Debtor Affiliates* [Docket No. 57];

h.      filed, on May 19, 2016, the *Notice of (I) Commencement of Prepackaged Chapter 11 Bankruptcy Cases, (II) Combined Hearing on the Disclosure Statement, Confirmation of the Joint Prepackaged Chapter 11 Plan, and Related Matters, and (III) Objection Deadlines, and Summary of the Debtors' Joint Prepackaged Chapter 11 Plan* [Docket No. 81] (the "Confirmation Hearing Notice"), which contained notice of the commencement of these Chapter 11 Cases, the date and time set for the hearing to consider approval of the Disclosure Statement and Confirmation of the Plan (the "Confirmation Hearing"), and the deadline for filing objections to the Plan and the Disclosure Statement;

i.      filed, on May 24, 2016, the *Affidavit of Service of the Confirmation Hearing Notice* [Docket No. 102] (the "Confirmation Hearing Notice Affidavit");

j.      published, on May 24, 2016, in *The New York Times* (national edition), *The Wall Street Journal*, and *Dallas Morning News*, as evidenced by the *Affidavit of Publication* [Docket No. 211], (together with the Confirmation Hearing Notice Affidavit, the "Affidavits"), the Confirmation Hearing Notice, consistent with the order granting the Scheduling Motion [Docket No. 52] (the "Scheduling Order");

---

3   Unless otherwise indicated, use of the term "filed" herein refers also to the service of the applicable document filed on the docket in these Chapter 11 Cases, as applicable.

k.      filed, on June 3, 2016, the *Declaration of Jane Sullivan on Behalf of Epiq Bankruptcy Solutions, LLC Regarding the Tabulation of Ballots Cast on the Joint Prepackaged Chapter 11 Plan of Reorganization of Dex Media, Inc. and Its Debtor Affiliates* [Docket No. 110] (the "Final Voting Report" and, together with the Preliminary Voting Report, the "Voting Reports"), which details the final results of the Plan voting process;

l.      filed, on July 8, 2016, the *Notice of Further Technical Modifications to Joint Prepackaged Chapter 11 Plan of Reorganization of Dex Media, Inc. and Its Debtor Affiliates* [Docket No. 287];

m.      filed, on July 8, 2016, the *Plan Supplement for the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization of Dex Media, Inc. and Its Debtors Affiliates* [Docket No. 289] (as modified, amended, or supplemented from time to time, the "Plan Supplement" and which, for purposes of the Plan and this Confirmation Order, is included in the definition of "Plan");

n.      filed, on July 9, 2016, the *First Amended Plan Supplement for the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization of Dex Media, Inc. and Its Debtors Affiliates* [Docket No. 290];

o.      filed, contemporaneously herewith, the *Debtors' Memorandum of Law in Support of an Order Approving the Debtors' Disclosure Statement for, and Confirming, the Amended Joint Chapter 11 Plan of Dex Media, Inc. and Its Debtor Affiliates* (the "Confirmation Brief"), which includes the *Declaration of Andrew Hede in Support of an Order Approving the Debtors' Disclosure Statement for, and Confirming, the Debtors' Amended Joint Prepackaged Chapter 11 Plan* (the "Hede Declaration" and, together with the First Day Declaration, the "Declarations"); and

p.      operated their businesses and managed their properties during these Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

The Court having:

a.      entered, on May 18, 2016, the Scheduling Order;

b.      set July 15, 2016, at 10:00 a.m. (prevailing Eastern Time), as the date and time for the Confirmation Hearing, pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code, as set forth in the Scheduling Order;

c.      reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Brief, the Declarations, the Voting Reports, the Confirmation Hearing Notice, the Affidavits, and all filed pleadings, exhibits, statements, and comments regarding approval of the Disclosure Statement and Confirmation, including all objections, statements, and reservations of rights;

3

d. held the Confirmation Hearing;

e. heard the statements and arguments made by counsel in respect of approval of the Disclosure Statement and Confirmation;

f. considered all oral representations, testimony, documents, filings, and other evidence regarding approval of the Disclosure Statement and Confirmation; and

g. taken judicial notice of all pleadings and other documents filed, all orders entered, and all evidence and arguments presented in these Chapter 11 Cases.

NOW, THEREFORE, it appearing to the Court that notice of the Confirmation Hearing and the opportunity for any party in interest to object to approval of the Disclosure Statement and Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of approval of the Disclosure Statement and Confirmation and other evidence presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court makes and issues the following findings of fact and conclusions of law, and orders:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A. Findings and Conclusions.**

1. The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

4

**B.     Jurisdiction, Venue, and Core Proceeding.**

2.     The Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.   The Court has exclusive jurisdiction to determine whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively.   Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.   Approval of the Disclosure Statement, including associated solicitation procedures, and Confirmation of the Plan are core proceedings within the meaning of 28 U.S.C. § 157(b)(2).

**C.     Eligibility for Relief.**

3.     The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

**D.     Commencement and Joint Administration of these Chapter 11 Cases.**

4.     On the Petition Date, each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.   In accordance with the *Order (I) Directing Joint Administration of Related Chapter 11 Cases, and (II) Granting Related Relief* [Docket No. 50], these Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015.   Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   No trustee or examiner has been appointed in these Chapter 11 Cases.   No statutory committee of unsecured creditors or equity security holders has been appointed pursuant to section 1102 of the Bankruptcy Code in these Chapter 11 Cases.

5

**E.     Judicial Notice, Objections.**

5.     The Court takes judicial notice of (and deems admitted into evidence for purposes of Confirmation of the Plan) the docket of the Chapter 11 Cases maintained by the clerk of the Court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of these Chapter 11 Cases.   All unresolved objections, statements, informal objections, and reservations of rights, if any, related to the Plan, the Disclosure Statement, or Confirmation are overruled on the merits.   The objection of the Texas Comptroller [Docket No. 197] has been withdrawn [Docket No. 251] in consideration for the terms set forth herein.   The objection of (a) The Robert Magee Vineyard 2004 Trust and (b) Sebastian Miralles, Robert Rutty and Martino Lorenzo have also been withdrawn. [Docket Nos. 271, 272].

**F.     Burden of Proof—Confirmation of the Plan.**

6.     The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation.

**G.     Notice.**

7.     As evidenced by the Affidavits, due, adequate, and sufficient notice of the Disclosure Statement, the Plan, and the Confirmation Hearing, together with all deadlines for voting to accept or reject the Plan as well as objecting to the Disclosure Statement and the Plan, has been provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the administrative agents of the Debtors' prepetition secured credit facilities; (d) counsel to the administrative agents under the Debtors' prepetition credit agreements; (e) counsel to the ad

hoc group of the Debtors' prepetition secured lenders; (f) the indenture trustee for the Debtors' prepetition subordinated notes; (g) counsel to the indenture trustee for the Debtors' prepetition subordinated notes; (h) counsel to the ad hoc group of the Debtors' prepetition subordinated note holders; (i) counsel to Mudrick Capital Management, L.P.; (j) the United States Attorney's Office for the District of Delaware; (k) the Internal Revenue Service; (l) the Environmental Protection Agency; (m) the office of the attorneys general for the states in which the Debtors operate; (n) the Securities and Exchange Commission; and (o) any party that has requested notice pursuant to Bankruptcy Rule 2002; (the parties identified in clauses (a) through (o), collectively, the "Core Notice Parties").  Also, the Confirmation Hearing Notice was published in *The New York Times* (national edition), *The Wall Street Journal*, and *Dallas Morning News* on May 24, 2016 in compliance with the Scheduling Order and Bankruptcy Rule 2002(l).  Such notice was adequate and sufficient pursuant to section 1128 of the Bankruptcy Code, Bankruptcy Rules 2002 and 3020, and other applicable law and rules, and no other or further notice is or shall be required.

        **H.**        **Bar Date.**

8.        On June 8, 2016, the Court entered an order [Docket No. 152] (the "Bar Date Order") establishing July 7, 2016 as the general deadline to file proofs of claims for all Claims against the Debtors that arose prior to the Petition Date and establishing a governmental unit bar date of November 14, 2016.

        **I.**        **Disclosure Statement.**

9.        The Disclosure Statement contains (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations, including the Securities Act, and (b) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy

Code) with respect to the Debtors, the Plan, and the transactions contemplated therein. The

filing of the Disclosure Statement with the clerk of the Court satisfies Bankruptcy Rule 3016(b).

**J.      Ballots.**

10.      The Classes of Claims entitled under the Plan to vote to accept or reject the Plan

(the "Voting Classes") are set forth below:

| Class | Designation |
| --- | --- |
| 3 | Dex East Credit Facility Claims |
| 4 | Dex West Credit Facility Claims |
| 5 | RHDI Credit Facility Claims |
| 6 | SuperMedia Credit Facility Claims |
| 7 | Subordinated Notes Claims |

11.      The ballots the Debtors used to solicit votes to accept or reject the Plan from

Holders in the Voting Classes adequately addressed the particular needs of these Chapter 11

Cases and were appropriate for Holders in the Voting Classes to vote to accept or reject the Plan.

**K.      Solicitation.**

12.      As described in the Voting Reports, the solicitation of votes on the Plan complied

with the solicitation procedures set forth in the Scheduling Motion and approved in the

Scheduling Order (the "Solicitation Procedures"), was appropriate and satisfactory based upon

the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the

Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable rules, laws,

and regulations, including the registration requirements under the Securities Act.

13.      As described in the Voting Reports and the Declarations, as applicable, prior to

the Petition Date, the Plan, the Disclosure Statement, and the applicable ballot (collectively,

the "Solicitation Packages"), and, following the Petition Date, the Confirmation Hearing Notice,

were transmitted and served, including to all Holders in the Voting Classes, in compliance with

the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, the Scheduling Order, and any applicable nonbankruptcy law.    Transmission and service of the Solicitation Packages and the Confirmation Hearing Notice were timely, adequate, and sufficient.    No further notice is required.

14.    As set forth in the Voting Reports, the Solicitation Packages were distributed to Holders in the Voting Classes that held a Claim as of April 28, 2016 (the date specified in such documents for the purpose of the solicitation).    The establishment and notice of the Voting Record Date were reasonable and sufficient.

15.    The period during which Holders in the Voting Classes had to submit acceptances or rejections to the Plan was a reasonable and sufficient period of time for such Holders to make an informed decision to accept or reject the Plan.

16.    Under section 1126(f) of the Bankruptcy Code, the Debtors were not required to solicit votes from the Holders of Claims or Interests, as applicable, in the Unimpaired Classes (defined below), each of which is conclusively presumed to have accepted the Plan.  The Debtors were also not required to solicit votes from the Holders, if any, of Claims in Class 9 (Claims Relating to the Purchase and/or Sale of Debt and Securities) and Interests in Class 12 (Interests in Parent), which were deemed to reject the Plan.  Additionally, Classes 10 and 11 are Classes of Intercompany Claims and Interests, which are either (a) cancelled, and thus Impaired and deemed to reject the Plan  (collectively with Classes 9 and 12, the "Deemed Rejecting Classes") or (b) Reinstated, and thus Unimpaired and presumed to have accepted the Plan.  Nevertheless, the Debtors served Holders in the Deemed Rejecting Classes with the Plan and Disclosure Statement.

**L.    Voting.**

17.    As evidenced by the Voting Reports, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling Order, the Disclosure Statement, and any applicable nonbankruptcy law, rule, or regulation.

**M.    Plan Supplement.**

18.    The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the filing and notice of such documents are good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice is required.    All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.    Subject to the terms of the Plan, and only consistent therewith, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement before the Effective Date.    The Core Notice Parties and Holders of Claims and Interests were provided due, adequate, and sufficient notice of the Plan Supplement.

**N.    Compliance with Bankruptcy Code Requirements—Section 1129(a)(1).**

19.    The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code.    In addition, the Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

**(i)    Proper Classification—Sections 1122 and 1123.**

20.    The Plan satisfies the requirements of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code. Article III of the Plan provides for the separate classification of Claims and Interests into 12 Classes.    Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests.    The classifications reflect no improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Interests.

10

Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.

**(ii)      Specified Unimpaired Classes—Section 1123(a)(2).**

21.      The Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code. Article III of the Plan specifies that Claims and Interests, as applicable, in the following Classes (the "Unimpaired Classes") are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code:

| Class | Designation |
|---|---|
| 1 | Other Priority Claims |
| 2 | Other Secured Claims |
| 8 | General Unsecured Claims |
| 10 | Intercompany Claims |
| 11 | Intercompany Interests |

22.      Additionally, Article II of the Plan specifies that Allowed Administrative Claims, Accrued Professional Compensation Claims, and Priority Tax Claims will be paid in full in accordance with the terms of the Plan, although these Claims are not separately classified under the Plan.

**(iii)     Specified Treatment of Impaired Classes—Section 1123(a)(3).**

23.      The Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code. Article III of the Plan specifies that Claims and Interests, as applicable, in the following Classes (the "Impaired Classes") are Impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, and describes the treatment of such Classes:

| Class | Designation |
|---|---|
| 3 | Dex East Credit Facility Claims |
| 4 | Dex West Credit Facility Claims |
| 5 | RHDI Credit Facility Claims |
| 6 | SuperMedia Credit Facility Claims |
| 7 | Subordinated Notes Claims |

| 9 | Claims Relating to the Purchase and/or Sale of Debt and Securities |
|---|---|
| 12 | Interests in Parent |

**(iv)    No Discrimination—Section 1123(a)(4).**

24.    The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.

**(v)    Adequate Means for Plan Implementation—Section 1123(a)(5).**

25.    The Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code. The provisions in Article IV and elsewhere in the Plan, and in the exhibits and attachments to the Plan and the Disclosure Statement, provide, in detail, adequate and proper means for the Plan's implementation, including regarding:  (a) the Reorganized Debtors' entry into the Takeback First Lien Term Loan and the Takeback First Lien Term Loan Documents; (b) consummation of the Restructuring Transactions; (c) the issuance of New Common Stock and the Warrants; (d) authorizing the Debtors and/or Reorganized Debtors to take all actions necessary to effectuate the Plan, including those actions necessary to effect the Restructuring Transactions; (e) authorizing the adoption of and entry into the New Organizational Documents; (f) the cancellation of existing securities and agreements, and the surrender of existing securities (except as otherwise provided therein); (g) the settlement and discharge of Claims and Interests as set forth in the Plan; (h) the vesting of estate assets in the Reorganized Debtors; (i) the preservation and vesting of certain Causes of Action in the Reorganized Debtors; and (j) the appointment of directors to the New Board and officers to the Reorganized Parent and the other Reorganized Debtors.

**(vi)     Voting Power of Equity Securities—Section 1123(a)(6).**

26.     The Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code. It prohibits the issuance of non-voting equity securities as required by such section.  After the Effective Date, Reorganized Parent may amend and restate the New Organizational Documents, and the Reorganized Debtors may file their respective certificates or articles of incorporation, bylaws, or such other applicable formation documents, and other constituent documents as permitted by the laws of the respective states, provinces, or countries of incorporation and the New Organizational Documents.

**(vii)     Directors and Officers—Section 1123(a)(7).**

27.     The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. In accordance with Article IV.H of the Plan, as of the Effective Date, the initial officers of the Reorganized Debtors will be the officers of the Debtors existing immediately prior to the Effective Date and the existing directors of the Reorganized Debtors, other than Reorganized Parent, will be the directors of such Debtors existing immediately prior to the Effective Date. The initial New Board of Reorganized Parent shall be selected in a manner consistent with the provisions of the New Stockholders Agreement Term Sheet and shall include those individuals disclosed prior to the Confirmation Hearing as part of the Plan Supplement.  Successors will be elected in accordance with the New Organizational Documents of Reorganized Parent.

**(viii)     Impairment / Unimpairment of Classes—Section 1123(b)(1).**

28.     The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code. Article III of the Plan leaves each Class of Claims and Interests Impaired or Unimpaired.

**(ix)     Assumption—Section 1123(b)(2).**

29.     The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.  Article V of the Plan provides for the assumption or assumption and assignment of the Debtors' Executory

Contracts and Unexpired Leases not previously assumed, assumed and assigned, or rejected during these Chapter 11 Cases under section 365 of the Bankruptcy Code.

30.     For the avoidance of doubt, this Confirmation Order constitutes approval of the assumption by the applicable Debtor or Debtors, under the Plan and in accordance with section 365 of the Bankruptcy Code, of all Executory Contracts (collectively, and together with any applicable amendments, annexes, exhibits, schedules, attachments, addenda and other documents forming a part thereof, the "CTL Contracts") between CenturyLink, Inc. and/or any of its affiliates (collectively, the "CTL Entities"),[4] on the one hand, and any of the Debtors, on the other hand, on the Effective Date.  Notwithstanding anything to the contrary in the Plan, the Disclosure Statement or this Confirmation Order, (a) such assumption shall be effective as of the Effective Date and shall not be subject to reversal or nullification and (b) upon the Effective Date, any and all nonbankruptcy rights, remedies, claims defenses and, as applicable, obligations of any Debtor or CTL Entity existing immediately prior to the Plan becoming effective, including, but not limited to, those under applicable nonbankruptcy law, those under the CTL Contracts, and/or those in connection with any litigation, mediation, arbitration or proceeding between any of the Debtors and any of the CTL Entities pending as of the Effective Date, are unaffected by the Plan, the Disclosure Statement or entry of this Confirmation Order.

---

[4]     The CTL Entities include, but are not limited to, CenturyLink, Inc., Qwest Communications International, Inc., Qwest Corporation, CenturyLink Communications, LLC f/k/a Qwest Communications Company, LLC, Qwest Dex Holdings, Inc., Savvis Communications Corporation, Embarq Corporation, Embarq Directory Trademark Company, LLC, Embarq Minnesota, Inc., Embarq Florida, Inc., Carolina Telephone and Telegraph Company LLC, United Telephone Southeast, LLC f/k/a United Telephone - Southeast, Inc., United Telephone Company of the Carolinas LLC, United Telephone Company of Southcentral Kansas, United Telephone Company of Eastern Kansas, United Telephone Company of Kansas, Embarq Missouri, Inc., United Telephone Company of Texas, Inc., United Telephone Company of the West, The United Telephone Company of Pennsylvania LLC, United Telephone Company of New Jersey, Inc., United Telephone Company of the Northwest, United Telephone Company of Ohio, United Telephone Company of Indiana, Inc., Central Telephone Company, Central Telephone Company of Virginia, and Central Telephone Company of Texas.

> **(x)** **Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action—Section 1123(b)(3).**

31. The Plan is consistent with section 1123(b)(3) of the Bankruptcy Code. In accordance with section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the distributions, settlements, and other benefits provided under the Plan, except as stated otherwise in the Plan, the provisions of the Plan constitute a good-faith compromise of all Claims, Interests, and controversies relating to the contractual, subordination, and other legal rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The compromise and settlement of such Claims and Interests embodied in the Plan and reinstatement and unimpairment of other Classes identified in the Plan are in the best interests of the Debtors, the Debtors' estates, and all Holders of Claims and Interests, and are fair, equitable, and reasonable.

> **(xi)** **Additional Plan Provisions—Section 1123(b)(6).**

32. The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

> **O.** **Debtor Compliance with the Bankruptcy Code—Section 1129(a)(2).**

33. The Debtors have complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court, and thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code. Specifically, each Debtor:

> a. is an eligible debtor under section 109, and a proper proponent of the Plan under section 1121(a), of the Bankruptcy Code; and

15

b. complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Local Rules, any applicable nonbankruptcy law, rule and regulation, the Scheduling Order, and all other applicable law, in transmitting the Solicitation Packages, and related documents and notices, and in soliciting and tabulating the votes on the Plan.

**P.     Plan Proposed in Good Faith—Section 1129(a)(3).**

34.     The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors have proposed the Plan in good faith and not by any means forbidden by law. In so determining, the Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan itself, the Restructuring Support Agreement, the process leading to Confirmation, including the overwhelming support of Holders of Claims and Interests for the Plan, and the transactions to be implemented pursuant thereto. These Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to implement the Restructuring Transactions, reorganize, and emerge from bankruptcy with a capital and organizational structure that will allow them to conduct their businesses and satisfy their obligations with sufficient liquidity and capital resources.

**Q.     Payment for Services or Costs and Expenses—Section 1129(a)(4).**

35.     The procedures set forth in the Plan for the Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

**R.     Directors, Officers, and Insiders—Section 1129(a)(5).**

36.     The Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code. Pursuant to Article IV.H of the Plan, the Debtors will, to the extent practicable, disclose in advance of the Confirmation Hearing the identity and affiliations of any Person proposed to serve on the initial New Boards, as well as those Persons that will serve as an

16

officer of Reorganized Parent or any of the Reorganized Debtors. To the extent any such director or officer is an "insider" under the Bankruptcy Code, the nature of any compensation to be paid to such director or officer will also be disclosed. Each such director and officer shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents and other constituent documents of Reorganized Parent and the Reorganized Debtors.

**S.      No Rate Changes—Section 1129(a)(6).**

37.      Section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases. The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

**T.      Best Interest of Creditors—Section 1129(a)(7).**

38.      The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis attached to the Disclosure Statement and the other evidence related thereto in support of the Plan that were proffered or adduced in the Declarations or at, prior to, or in connection with the Confirmation Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that Holders of Allowed Claims and Interests in each Class will recover at least as much under the Plan on account of such Claim or Interest, as of the Effective Date, as such Holder would receive if the Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.

**U.      Acceptance by Certain Classes—Section 1129(a)(8).**

39.      The Plan does not satisfy the requirements of section 1129(a)(8) of the Bankruptcy Code. Classes 1, 2, and 8 constitute Unimpaired Classes, each of which is

conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code. The Voting Classes, Class 3, 4, 5, 6, and 7, have voted to accept the Plan. Holders of Claims in Class 9, if any, and Holders of Interests in Class 12 receive no recovery on account of their Claims or Interests pursuant to the Plan and are deemed to have rejected the Plan. Classes 10 and 11 are Classes of Intercompany Claims and Interests, which are either (a) cancelled, and thus Impaired and deemed to reject the Plan or (b) Reinstated, and thus Unimpaired and presumed to have accepted the Plan. Therefore, the Plan does not satisfy the requirements of section 1129(a)(8) of the Bankruptcy Code because at least one Impaired Class has not accepted the Plan. Notwithstanding the foregoing, as discussed more fully herein, the Plan is confirmable because it satisfies section 1129(b) of the Bankruptcy Code.

**V.      Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code—Section 1129(a)(9).**

40.      The treatment of Administrative Claims, Allowed Accrued Professional Compensation Claims, and Priority Tax Claims, under Article II of the Plan, and of Other Priority Claims under Article III of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**W.      Acceptance by At Least One Impaired Class—Section 1129(a)(10).**

41.      The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As evidenced by the Voting Reports, the Voting Classes voted to accept the Plan by the requisite numbers and amounts of Claims, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code), specified under the Bankruptcy Code.

### X.   Feasibility—Section 1129(a)(11).

42.   The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.  Although the Debtors' businesses operate in a highly competitive industry and market, and although it is impossible to predict with certainty the precise future profitability of the Debtors' financial projections, as demonstrated by the evidence in the record, including the Declarations,  Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtors, the Reorganized Debtors, or any successor to the Reorganized Debtors under the Plan, except as provided under the Plan.  Furthermore, the financial projections attached to the Disclosure Statement and the other evidence supporting Confirmation of the Plan proffered or adduced by the Debtors at, or prior to, or in the Declarations filed in connection with, the Confirmation Hearing:  (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; (d) establish that the Plan is feasible; and (e) establish that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan.  Therefore, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

### Y.   Payment of Fees—Section 1129(a)(12).

43.   The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.  Article II.D of the Plan provides for the payment of all fees due and payable by the Debtors under 28 U.S.C. § 1930.

### Z.   Continuation of Employee Benefits—Section 1129(a)(13).

44.   The Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.  Article IV.O of the Plan provides that from and after the Effective Date, the

19

payment of all retiree benefits (as defined in section 1114 of the Bankruptcy Code), if any, will continue in accordance with applicable law.

### AA.    Non-Applicability of Certain Sections—Sections 1129(a)(14), (15), and (16).

45.    Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.  The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.

### BB.    "Cram Down" Requirements—Section 1129(b).

46.    The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that the Deemed Rejecting Classes have been deemed to reject the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code.  *First*, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met.  *Second*, the Plan is fair and equitable with respect to the Deemed Rejecting Classes. The Plan has been proposed in good faith, is reasonable and meets the requirements that no Holder of any Claim or Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Interest and no Holder of a Claim in a Class senior to such Classes is receiving more than 100% on account of its Claim. Specifically, to the extent Class 10 Intercompany Claims or Class 11 Intercompany Interests are Reinstated, such treatment is provided for administrative convenience and efficiency, and not on account of such Claims and/or Interests, and will not alter the treatment provided for any other Holder of any Claim or Interest.  Accordingly, the Plan is fair and equitable towards all Holders of Claims and Interests in the Deemed Rejecting Classes. *Third*, the Plan does not discriminate unfairly with respect to the Deemed Rejecting Classes because similarly situated creditors will receive substantially similar treatment on account of their Claims and Interests irrespective of

20

Class. Therefore, the Plan may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

### CC.    Only One Plan—Section 1129(c).

47.    The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code. The Plan is the only chapter 11 plan filed in each of these Chapter 11 Cases.

### DD.    Principal Purpose of the Plan—Section 1129(d).

48.    The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

### EE.    Good Faith Solicitation—Section 1125(e).

49.    The Debtors, the Backstop Parties, the Credit Agreement Agents, the Supporting Lenders, the Term Loan Lenders, and any and all affiliates, directors, officers, members, managers, shareholders, partners, employees, attorneys, and advisors of each of the foregoing, as applicable, have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to support and consummation of the Plan, including the execution, delivery, and performance of the Restructuring Support Agreement, the extension of financing under the Takeback First Lien Term Loan, and solicitation and receipt of acceptances of the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

### FF.    Satisfaction of Confirmation Requirements.

50.    Based on the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

21

**GG.    Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

51.    Each of the conditions precedent to the Effective Date, as set forth in Article IX of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Article IX of the Plan.

**HH.    Implementation.**

52.    All documents necessary to implement the Plan and all other relevant and necessary documents (including the Takeback First Lien Term Loan Documents and the New Organizational Documents) have been negotiated in good faith and at arm's length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and shall not be in conflict with any federal or state law.

**II.    Disclosure of Facts.**

53.    The Debtors have disclosed all material facts regarding the Plan, including with respect to consummation of the Takeback First Lien Term Loan Documents and the New Organizational Documents.  The Debtors have also disclosed steps they intend to take in the near future to consolidate and streamline their organization.

**JJ.    Good Faith.**

54.    The Debtors, the Released Parties, and the Releasing Parties have been and will be acting in good faith if they proceed to:  (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed by this Confirmation Order to reorganize the Debtors' businesses and effect the Takeback First Lien Term Loan Documents, the New Organizational Documents, and the other Restructuring Transactions.

### KK.    Essential Element of the Plan.

55.    The Takeback First Lien Term Loan is an essential element of the Plan, and entry into the Takeback First Lien Term Loan is in the best interests of the Debtors, their estates, and their creditors.  The Debtors have exercised sound business judgment in determining to enter into the Takeback First Lien Term Loan and have provided adequate notice thereof.  The Takeback First Lien Term Loan has been negotiated in good faith and at arm's length among the Debtors and the lenders thereto, and any credit extended and loans made to the Reorganized Debtors by the Term Loan Lenders pursuant to the Takeback First Lien Term Loan, as applicable, and any fees paid thereunder are deemed to have been extended, issued, and made in good faith.

56.    Article VIII.E of the Plan describes certain releases granted by the Debtors (the "Debtor Releases").  The Debtors have satisfied the business judgment standard with respect to the propriety of the Debtor Releases.  Such releases are a necessary and integral element of the Plan, and are fair, reasonable, and in the best interests of the Debtors, the Debtors' estates, and Holders of Claims and Interests.  Also, the Debtor Releases are:  (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good-faith settlement and compromise of the Claims released in Article VIII.E of the Plan; (c) given, and made, after due notice and opportunity for hearing; and (d) a bar to any of the Debtors asserting any Claim or Cause of Action released by Article VIII.E of the Plan.

57.    Article VIII.F of the Plan describes certain releases granted by the Releasing Parties (the "Third-Party Release").  The Third-Party Release provides finality for the Debtors, the Reorganized Debtors, and the Released Parties regarding the parties' respective obligations under the Plan and with respect to the Reorganized Debtors. The Third-Party Release is consensual with respect to the Releasing Parties.  The Confirmation Hearing Notice sent to

23

Holders of Claims and Interests and published in *The New York Times* (national edition), *The Wall Street Journal*, and *Dallas Morning News* on May 24, 2016, and the ballots sent to all Holders of Impaired Claims entitled to vote on the Plan, in each case, unambiguously stated that the Plan contains the Third-Party Release.  Such release is a necessary and integral element of the Plan, and is fair, equitable, reasonable, and in the best interests of the Debtors, the Debtors' estates, and all Holders of Claims and Interests.  Also, the Third-Party Release is:  (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims released by the Third-Party Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

58.    The exculpation, described in Article VIII.G of the Plan (the "Exculpation"), is appropriate under applicable law because it was proposed in good faith, was formulated following extensive good-faith, arm's-length negotiations with key constituents, and is appropriately limited in scope.  Without limiting anything in the Exculpation, each Exculpated Party has participated in these Chapter 11 Cases in good faith and, except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Exculpated Claim; *provided* that the foregoing "Exculpation" shall have no effect on the liability of any entity that results from any such act or omission that is determined by a Final Order to have constituted actual fraud, gross negligence, or willful misconduct.  The Exculpated Parties have participated in any and all activities potentially underlying any Exculpated Claim in good faith and in compliance with the

applicable laws.  The Exculpation, including its carve-out for actual fraud, gross negligence, or willful misconduct, is entirely consistent with established practice in this jurisdiction and others.

59.     The injunction provision set forth in Article VIII.H of the Plan is necessary to implement, preserve, and enforce the Debtors' discharge, the Debtor Releases, the Third-Party Release, and the Exculpation, and is narrowly tailored to achieve these purposes.

60.     Article IV.K of the Plan appropriately provides that the Reorganized Debtors will retain, and may enforce, all rights to commence and pursue, as appropriate, any and all Causes of Action except for Causes of Action that have been expressly waived, settled, or otherwise released as provided in Article IV.K, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, in accordance with section 1123(b)(3)(B) of the Bankruptcy Code.  The provisions regarding the preservation of Causes of Action in the Plan, including the Plan Supplement, are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Debtors' estates, and Holders of Claims and Interests.

61.     The full release and discharge of all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors' estates described in Article VIII.D of the Plan (the "Lien Release") is necessary to implement the Plan.  The provisions of the Lien Release are appropriate, fair, equitable, and reasonable and are in the best interests of the Debtors, the Debtors' estates, and Holders of Claims and Interests.

## ORDER

IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

62.     **Findings of Fact and Conclusions of Law.**  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made

25

applicable herein by Bankruptcy Rule 9014. To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

63. **Disclosure Statement.** The information provided in the Disclosure Statement is adequate and the Disclosure Statement is approved in all respects.

64. **Solicitation.** To the extent applicable, the solicitation of votes on the Plan complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations, and was appropriate and satisfactory and is approved in all respects.

65. **Notice of Confirmation Hearing.** Notice of Confirmation Hearing was appropriate and satisfactory and is approved in all respects.

66. **Confirmation of the Plan.** The Plan is approved in its entirety and CONFIRMED under section 1129 of the Bankruptcy Code. The terms of the Plan, including the Plan Supplement, are incorporated by reference into and are an integral part of this Confirmation Order.

67. **Objections.** All objections and all reservations of rights pertaining to Confirmation or approval of the Disclosure Statement that have not been withdrawn, waived, or settled are overruled on the merits.

68. **Plan Modifications.** Subsequent to filing the Plan on May 17, 2016, the Debtors made certain technical modifications to the Plan (the "Plan Modifications"). The Plan Modifications comply with the requirements under the Restructuring Support Agreement and do not materially adversely affect the treatment of any Claim against or Interest in any of the Debtors under the Plan, and are hereby approved pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019. After giving effect to the Plan Modifications, the

Plan continues to meet the requirements of sections 1122 and 1123 of the Bankruptcy Code. The filing with the Court on May 18, 2016 and July 8, 2016, of the Plan Modifications and the disclosure of the Plan Modifications on the record at the Confirmation Hearing constitute due and sufficient notice thereof. Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

69.    **Deemed Acceptance of Plan.**    In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims and Interests who voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan as modified by the Plan Modifications. No Holder of a Claim shall be permitted to change its vote as a consequence of the Plan Modifications.

70.    **No Action Required.**  Under the provisions of the Delaware General Corporation Law, including section 303 thereof, and the comparable provisions of the Delaware Limited Liability Company Act, and section 1142(b) of the Bankruptcy Code, no action of the respective directors, equity holders, managers, or members of the Debtors is required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, the Restructuring Transactions, and any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan, including the Takeback First Lien Term Loan, the Takeback First Lien Term Loan Documents, and the New Organizational Documents, and the appointment and election of the members of the New Board and the officers, directors, and/or

managers of each of the Reorganized Debtors.  The Debtors have also disclosed steps they intend to take on the Effective Date to consolidate and streamline their organization.

71.    **Binding Effect.**  Upon the occurrence of the Effective Date, the terms of the Plan are immediately effective and enforceable and deemed binding on the Debtors, the Reorganized Debtors, and any and all holders of Claims or Interests (regardless of whether such holders of Claims or Interests have, or are deemed to have, accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

72.    **Vesting of Assets in the Reorganized Debtors.**  Except as otherwise provided in the Plan, this Confirmation Order, or in any agreement, instrument, or other document incorporated in the Plan (including the Takeback First Lien Term Loan Documents and the New Organizational Documents), on the Effective Date, all property in each estate, all Causes of Action, and any property acquired by any of the Debtors under the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

73.    **Effectiveness of All Actions.**  All actions contemplated by the Plan, including all actions in connection with the Takeback First Lien Term Loan Documents, are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable, under this Confirmation Order, without further application to, or order of the Court, or further action by the

respective officers, directors, managers, members, or equity holders of the Debtors or the Reorganized Debtors and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or equity holders.

74. **Restructuring Transactions**.    The Debtors or Reorganized Debtors, as applicable, are authorized to enter into and effectuate the Restructuring Transactions, including the entry into and consummation of the transactions contemplated by the Takeback First Lien Term Loan Documents and the New Organizational Documents, and may take any actions as may be necessary or appropriate to effect a corporate restructuring of their respective businesses or a corporate restructuring of the overall corporate structure of the Reorganized Debtors, as and to the extent provided in the Plan.    Any transfers of assets or equity interests effected or any obligations incurred through the Restructuring Transactions are hereby approved and shall not constitute fraudulent conveyances or fraudulent transfers or otherwise be subject to avoidance. Except as otherwise provided in the Plan, each Reorganized Debtor, as applicable, shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, under the applicable law in the jurisdiction in which such applicable Debtor is incorporated or formed.

75. **Cancellation of Notes, Instruments, Certificates, and Other Documents.** Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date:  (a) the obligations of the Debtors under the Dex East Credit Agreement, the Dex West Credit Agreement, the RDHI Credit Agreement, the SuperMedia Credit Agreement, and the Subordinated Notes Indenture, and any other certificate, share, note, bond, indenture, purchase right, option, warrant, or other

29

instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan) shall be cancelled solely as to the Debtors and the Reorganized Debtors shall not have any continuing obligations thereunder (provided any indemnity obligations as between non-Debtor parties are not hereby released and shall survive in accordance with their terms with respect to such non-Debtor parties); and (b) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and discharged.

76.     **Distributions.**  The procedures governing distributions contained in Article VI of the Plan shall be, and hereby are, approved in their entirety.  Except as otherwise set forth in the Plan or this Confirmation Order, the Reorganized Debtors shall make all distributions required under the Plan and the timing of distributions required under the Plan or this Confirmation Order shall be made in accordance with and as set forth in the Plan or this Confirmation Order, as applicable; *provided,* that distributions to Holders of Allowed Claims governed by a separate agreement and administered by a Servicer shall be deposited with the appropriate Servicer, at which time such distributions shall be deemed complete, and the Servicer shall deliver such distributions in accordance with the Plan and the terms of the governing agreement; *provided,*

30

*further*, that New Common Stock shall be distributed by a third-party transfer agent designated by the Debtors.

77.    **Claims Register.**  Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors or the Reorganized Debtors without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Court.  Epiq Bankruptcy Solutions, LLC, the Debtors' claims agent, is directed to adjust or expunge such Claims in the Claims Register, as applicable.

78.    **Preservation of Causes of Action.**  In accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to Article IV.L and Article VIII of the Plan, and as otherwise set forth in the Restructuring Support Agreement or any other order of the Court, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including, but not limited to, any actions specifically enumerated in the Plan Supplement, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors.  No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against it.  The Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.  Unless any Causes of Action against an Entity are

expressly waived, relinquished, exculpated, released, compromised, or settled in the Restructuring Support Agreement or the Plan, Confirmation Order, or other Court order, the Debtors or Reorganized Debtors, as applicable, expressly reserve all Causes of Action, for later adjudication and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

79.     **Subordination.**   Except as otherwise expressly provided in the Plan, this Confirmation Order, and any other order of the Court:   (a) the classification and manner of satisfying all Claims and Interests under the Plan takes into consideration all subordination rights, whether arising by contract or under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise; (b) any distributions under the Plan to Holders shall be received and retained free from any obligations to hold or transfer the same to any other Holder and shall not be subject to levy, garnishment, attachment, or other legal process by any Holder by reason of claimed contractual subordination rights; and (c) any such subordination rights shall be waived, and the Confirmation Order shall constitute an injunction enjoining any Entity from enforcing or attempting to enforce any contractual, legal, or equitable subordination rights to property distributed under the Plan, in each case other than as provided in the Plan.

80.     **Release of Liens.** Except  as otherwise provided in the Plan, the Takeback First Lien Term Loan Documents, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors' estates shall be

32

fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors their successors and assigns.  In addition, the Credit Agreement Agents shall, at the Debtors' and Reorganized Debtors', as applicable, expense (and with no representation or warranty by, or recourse to, the Credit Agreement Agents or any Term Loan Lender or any of their or their respective affiliates' officers, directors, employees, agents or counsel), execute and deliver all documents reasonably requested by the Debtors, Reorganized Debtors, or administrative agent(s) for the Takeback First Lien Term Loan to evidence the release of such mortgages, deeds of trust, Liens, pledges, and other security interests and shall authorize the Reorganized Debtors to file UCC-3 termination statements (to the extent applicable) with respect thereto.

81.    **Takeback First Lien Term Loan.**  On the Effective Date of the Plan, (a) the liens granted and contemplated by the Takeback First Lien Term Loan Documents shall be valid, binding, and enforceable liens on the collateral specified in the Takeback First Lien Term Loan Documents for the benefit of the secured parties under the Takeback First Lien Term Loan Documents and (b) the guarantees, mortgages, pledges, liens, and other security interests granted or contemplated by the Takeback First Lien Term Loan Documents, to secure the obligations arising under the Takeback First Lien Term Loan Documents shall be granted in good faith as an inducement to the lenders thereunder to convert to term loans thereunder and such guarantees, mortgages, pledges, liens, other security interests and other obligations incurred under the Takeback First Lien Term Loan Documents shall be deemed not to constitute a fraudulent conveyance or fraudulent or preferential transfer, shall not otherwise be subject to avoidance under applicable federal or state laws and will not subject the Takeback First Lien Term Loan

Agent or the other secured parties under the Takeback First Lien Term Loan Documents to any liability by reason of incurrence of such obligation or grant of such liens under applicable federal or state laws, including, but not limited to, successor or transferee liability, and the priorities of such liens and security interests shall be as set forth in the Takeback First Lien Term Loan Documents.  The Takeback First Lien Term Loan and all related mortgages and security agreements shall upon execution constitute the legal, valid and binding obligations of the Reorganized Debtors, enforceable in accordance with their terms and not in contravention of any state or federal law.  Neither the obligations created under the Takeback First Lien Term Loan Documents, including any and all amendments and modifications thereto any other agreements, instruments, certificates or documents related thereto, nor the liens granted thereunder shall constitute a preferential transfer or fraudulent conveyance.  In the event an order dismissing any of these Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such liens shall not be affected and shall continue in full force and effect in all respects and shall maintain their priorities and perfected status as provided in such documents until all obligations in respect thereof shall have been paid and satisfied in full.

82.     **New Organizational Documents.**   The terms of the Reorganized Debtors' respective certificate of incorporation and the bylaws, and all related documents, are approved in all respects.  The obligations of the applicable Reorganized Debtors related thereto, will, upon effectiveness, constitute legal, valid, binding, and authorized obligations of each of the Debtors or Reorganized Debtors, as applicable, enforceable in accordance with their terms and not in contravention of any state or federal law.  To the extent required under the Plan or applicable nonbankruptcy law, on the Effective Date, the Reorganized Parent will file the New Organizational Documents with the applicable Secretary of State and other applicable

34

authorities in the state, province, or country of incorporation in accordance with the corporate laws of the respective state, province, or country of incorporation. Pursuant to section 1123(a)(6) of the Bankruptcy Code, the New Organizational Documents of Reorganized Parent will prohibit the issuance of non-voting equity securities. After the Effective Date, Reorganized Parent may amend and restate the New Organizational Documents, and the Reorganized Debtors may file their respective certificates or articles of incorporation, bylaws, or such other applicable formation documents, and other constituent documents as permitted by the laws of the respective states, provinces, or countries of incorporation and the New Organizational Documents.

83.     **Simplification.**  The Debtors have also disclosed in the Plan Supplement certain Restructuring Transactions they intend to take on the Effective Date to consolidate and streamline their organization.

84.     **Class 12 Treatment**.  On the Effective Date, existing Interests in Parent shall be deemed canceled and extinguished, and shall be of no further force and effect, whether surrendered for cancelation or otherwise, and there shall be no distribution to Holders of Interests in Parent on account of such Interests.

85.     **Compromise of Controversies.**  In consideration for the distributions and other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims, Interests, and controversies resolved under the Plan and the entry of this Confirmation Order constitutes approval of such compromise and settlement under Bankruptcy Rule 9019.

86.     **Assumption of Contracts and Leases.**  On the Effective Date, each Debtor shall be deemed to have assumed and assigned to the Reorganized Debtors each Executory Contract

and Unexpired Lease to which it is a party pursuant to section 365 of the Bankruptcy Code and in accordance with the terms and conditions of Article V of the Plan. Except as otherwise provided in this Confirmation Order, any and all objections or reservations of rights in connection with the assumption or rejection of an Executory Contract or Unexpired Lease under the Plan, if any, are overruled on their merits. In the event of a dispute regarding (a) the amount of any payments to cure such a default, (b) the ability of Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (c) any other matter pertaining to assumption, the cure payments required by section 365(b)(l) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption and shall not prevent or delay implementation of the Plan or the occurrence of the Effective Date; *provided* that until any such dispute is resolved, section 365 of Bankruptcy Code shall remain in full force and effect with respect to such Executory Contract or Unexpired Lease.

87.     **Injunctions and Automatic Stay.** Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in these Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court entered as of the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the closing of these Chapter 11 Cases.

88.     **Waiver or Estoppel.** Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, as a Secured Claim, or not subordinated by virtue of an agreement made with the Debtors or their counsel (or any other

36

Entity), if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Court or evidenced by a written instrument acknowledged by the Debtors or their counsel before the Confirmation Date.

89.     **Indemnification.**   Notwithstanding anything in the Plan to the contrary (but subject to Article III.B.9 of the Plan), each Indemnification Obligation shall be assumed by the applicable Debtor, effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code or otherwise.   Each Indemnification Obligation shall remain in full force and effect, shall not be modified, reduced, discharged, impaired, or otherwise affected in any way, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose.   The Debtors shall assume the Indemnification Obligations for the current and former directors, officers, managers, employees, and other professionals of the Debtors, in their capacities as such. Notwithstanding the foregoing, nothing shall impair the ability of Reorganized Debtors to modify indemnification obligations (whether in the bylaws, certificates or incorporate or formation, limited liability company agreements, other organizational or formation documents, board resolutions, indemnification agreements, employment contracts, or otherwise) arising after the Effective Date; *provided* that none of the Reorganized Debtors shall amend or restate any New Organizational Documents before or after the Effective Date to terminate or adversely affect any of the Reorganized Debtors' Indemnification Obligations.

90.     **Authorization to Consummate.**   The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article IX of the Plan.

91.    **Bar Date.**  Except as provided under the Plan, no Proof of Claim may be filed after the Claims Bar date without order of the Court.  Except as otherwise provided in this Article II.A of the Plan and except with respect to Administrative Claims that are Accrued Professional Compensation Claims, requests for payment of Allowed Administrative Claims must be Filed and served on the Reorganized Debtors pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests, if any, must be Filed and served on the Reorganized Debtors and the requesting party no later than 60 days after the Effective Date.

92.    **Professional Compensation.**    All final requests for payment of Accrued Professional Compensation Claims incurred during the period from the Petition Date through the Confirmation Date, shall be Filed no later than 45 days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules and prior Court orders, the Allowed amounts of such Accrued Professional Compensation Claims shall be determined by the Court.  The amount of Accrued Professional Compensation Claims owing to the Professionals shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow when such Claims are Allowed by a Final Order. To the extent that funds held in the Professional Fee Escrow are unable to satisfy the amount of Accrued Professional Compensation Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, which shall be satisfied in

38

accordance with Article II.A of the Plan.  After all Accrued Professional Compensation Claims have been paid in full, the Final Order allowing such Accrued Professional Compensation Claims shall direct the escrow agent to return any excess amounts to the Reorganized Debtors and any such amounts shall be distributed in accordance with Article VI of the Plan to Holders of Allowed Dex East Credit Facility Claims, Dex West Credit Facility Claims, RHDI Credit Facility Claims, and SuperMedia Credit Facility Claims in the same percentages set forth in the definitions of Dex East Closing Expenses, Dex West Closing Expenses, RHDI Closing Expenses, and SuperMedia Closing Expenses, respectively.

93.     **Return of Deposits.**  All utilities, including, but not limited to, any Person or Entity that received a deposit or other form of adequate assurance of performance under section 366 of the Bankruptcy Code during these Chapter 11 Cases, must return such deposit or other form of adequate assurance of performance to the Debtors or the Reorganized Debtors, as the case may be, promptly following the occurrence of the Effective Date, if not returned or applied earlier.

94.     **Release, Exculpation, Discharge, and Injunction Provisions.**  The release, exculpation, discharge, injunction, and related provisions set forth in the Plan are approved and authorized in their entirety, and such provisions are effective and binding on all Persons and Entities to the extent provided therein.

95.     **Management Incentive Plan.**  The Reorganized Debtors shall adopt the Management Incentive Plan in accordance with the Plan; *provided* that, for the avoidance of doubt, the Court is not approving the terms of the Management Incentive Plan through this Confirmation Order.

96. **Pension Plans.** Notwithstanding anything to the contrary in the Plan, the Confirmation Order, the Bankruptcy Code (and section 1141 thereof), or any other document filed in these Chapter 11 Cases, the releases set forth in Article VIII of the Plan do not discharge, release, limit, or relieve the Debtors or the Reorganized Debtors (as applicable) or any other party, in any capacity, from any liability or responsibility with respect to the Pension Plans[5] under any law, regulatory provision or governmental policy. The Pension Benefit Guaranty Corporation and the Pension Plans shall not be enjoined or precluded from enforcing such liability or responsibility against any party as a result of any of the provisions of any plan of reorganization, confirmation order, Bankruptcy Code, or any other document filed in these Chapter 11 Cases.

97. **Compliance with Tax Requirements.** In connection with the Plan, to the extent applicable, Reorganized Parent and the other Reorganized Debtors, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors, as applicable, shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable

---

[5] The term "Pension Plans" shall have the meaning ascribed to it in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, and Other Compensation and Certain Reimbursable Expenses, (B) Continue Employee Benefits Programs (C) Continue Certain Ordinary Course Incentive Programs for Non-Insiders, and (D) Pay Related Costs, and (III) Granting Related Relief* [Docket No. 12].

and appropriate. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

98.    **Exemption from Certain Taxes and Fees.** To the maximum extent permitted pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment. The Bankruptcy Court shall retain specific jurisdiction with respect to these matters.

99.    **Texas Comptroller of Public Accounts.** Notwithstanding anything else to the contrary in the Plan or this Confirmation Order, these provisions will govern the treatment of the claims of the Texas Comptroller of Public Accounts: (a) nothing provided in the Plan or this Confirmation Order shall affect or impair any statutory or common law setoff rights of the Texas Comptroller in accordance with 11 U.S.C. § 553; (b) nothing provided in the Plan or this Confirmation Order shall affect or impair any rights of the Texas Comptroller to pursue any non-debtor third parties for tax debts or claims; (c) nothing provided in the Plan or this Confirmation Order shall be construed to preclude the payment of interest on the Texas Comptroller's administrative expense tax claims; and (d) the Texas Comptroller shall not be required to file an Administrative Claim for postpetition priority taxes.

100.    **AT&T.**    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, for the avoidance of doubt and with no need to file a Proof of Claim, any and all nonbankruptcy rights, remedies, claims and defenses related to (a) the patent infringement dispute regarding U.S. Patent No. 6,065,016 and U.S. Patent No. 7,907,714 (the "IP Dispute") and (b) the claims of AT&T Corp. and its affiliates that are liquidated and not contingent, each of which is less than $1 million (the "Claims"), existing immediately prior to the Plan becoming effective with respect to the Debtors, are unaffected by the Plan or entry of this Confirmation Order, and the Reorganized Debtors shall have and retain any and all rights, remedies, claims and defenses with respect to the Claims and the IP Dispute.

101.    **Internal Revenue Service.**    Notwithstanding any provision to the contrary in the Plan, the Order confirming the Plan, and any implementing Plan documents (collectively, "Documents"), nothing shall: (1) affect the ability of the Internal Revenue Service ("IRS") to pursue any non-debtors to the extent allowed by non-bankruptcy law for any liabilities that may be related to any federal tax liabilities owed by the Debtors or the Debtors' Estates; (2) affect the rights of the United States to assert setoff and recoupment and such rights are expressly preserved; (3) discharge any claim of the IRS described in 11 U.S.C. § 1141(d)(6); (4) expand the scope of section 525 of the Bankruptcy Code; or (5) preclude the IRS from amending any prepetition or post-petition claim.  To the extent the IRS Priority Tax Claims (including any penalties, interest or additions to tax entitled to priority under the Bankruptcy Code), if any, are not paid in full in cash on the Effective Date, the IRS Priority Tax Claims shall accrue interest commencing on the Effective Date at the rate and method set forth in 26 U.S.C. §§ 6621 and 6622. IRS administrative expense claims shall accrue interest and penalties as provided by non-bankruptcy law until paid in full.  The Bankruptcy Court may retain jurisdiction, but not exclusive jurisdiction, over IRS claims and issues arising therefrom to the extent allowed by

non-bankruptcy law.  Moreover, nothing in this Order or the Plan Documents shall: (a) be construed as a compromise or settlement of any IRS claim or interest; (b) effect a release, discharge or otherwise preclude any claim whatsoever against any Debtor by or on behalf of the IRS (i) for any liability arising out of prepetition or postpetition tax periods for which a required return has not been filed or (ii) as a result of a pending audit or audit that may be performed with respect to any prepetition tax or postpetition tax return shall be paid in accordance with the 11 U.S.C. §§ 1129(a)(9)(A) and (C).  Further, any liability arising out of prepetition or postpetition tax periods for which a required return has not been filed or as a result of a pending audit or audit which may be performed with respect to any prepetition or postpetition tax return shall be paid in accordance with 11 U.S.C. §§ 1129(a)(9)(A) and (C).

102.    **Documents, Mortgages, and Instruments.**  Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized and directed to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the Plan, including the Restructuring Transactions, and this Confirmation Order.

103.    **Continued Effect of Stays and Injunction.**  Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays arising under or entered during these Chapter 11 Cases under section 362 of the Bankruptcy Code or otherwise and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

104.    **Nonseverability of Plan Provisions Upon Confirmation.**  Each provision of the Plan is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (c) nonseverable and mutually dependent.

43

105.   **Post-Confirmation Modifications.**   Without need for further order or authorization of the Court, the Debtors or the Reorganized Debtors, as applicable, are authorized ~~and empowered~~ to make any and all modifications to any and all documents that are necessary to effectuate the Plan that do not materially modify the terms of such documents and are consistent with the Plan (subject to any applicable consents or consultation rights set forth therein).   Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors and the Reorganized Debtors expressly reserve their respective rights to alter, amend, or modify materially the Plan with respect to such Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.   Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article X of the Plan.

106.   **Choice of Law.**   Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided* that corporate or limited liability company governance matters relating to the Debtors or the Reorganized Debtors, as applicable, not incorporated or

44

formed (as applicable) in the State of New York shall be governed by the laws of the state of incorporation or formation (as applicable) of the applicable Debtor or Reorganized Debtor. The State of New York has (a) a substantial relationship to the parties and to the underlying transactions embodied by the Plan, and (b) a material interest in the determination of matters concerning the rights, obligations, construction, and implementation of the Plan and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan

107.    **Applicable Nonbankruptcy Law.**  The provisions of this Confirmation Order, the Plan and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

108.    **Waiver of Filings.**  Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the Court or the Office of the U.S. Trustee is permanently waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

109.    **Governmental Approvals Not Required.**  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority with respect to the dissemination, implementation, or consummation of the Plan and the Disclosure Statement, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

110.    **Section 1145 of the Bankruptcy Code.**  Pursuant to section 1145 of the Bankruptcy Code, the issuances of the New Common Stock, the Warrants, and the shares of the New Common Stock issuable upon exercise of the Warrants as contemplated by the Plan are

45

exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration prior to the offering, issuance, distribution, or sale of Securities.  The New Common Stock and the Warrants (a) are not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (b) are freely tradable and transferable by any initial recipient thereof that (i) is not an "affiliate" of the Debtors or Reorganized Debtors as defined in Rule 144(a)(1) under the Securities Act, (ii) has not been such an "affiliate" within 90 days of such transfer, and (iii) is not an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code.

111.    **Warrants and New Common Stock.**  All New Common Stock to be issued as contemplated by the Plan and all New Common Stock issuable upon exercise of the Warrants will, (upon issuance in accordance with the terms of the Warrant Agreement,) will be duly issued, fully paid and nonassessable and free from preemptive rights (other than those set forth in the New Stockholders Agreement) and all taxes, liens, charges and security interests created by or imposed upon the Reorganized Parent with respect to the issuance and holding thereof.  The Warrant Agreement and New Stockholders Agreement are approved in all respects, and will, upon effectiveness, constitute legal, valid, binding, and authorized obligations of each of the Debtors or Reorganized Debtors, as applicable, enforceable in accordance with their terms and not in contravention of any state or federal law.

112.    **Notices of Confirmation and Effective Date.**  The Reorganized Debtors shall serve notice of entry of this Confirmation Order, substantially in the form attached hereto as **Exhibit B** (the "Confirmation Order Notice") in accordance with Bankruptcy Rules 2002 and 3020(c) on all holders of Claims and Interests and the Core Notice Parties within ten Business Days after the date of entry of this Confirmation Order.  As soon as reasonably

practicable after the Effective Date, the Reorganized Debtors shall file notice of the Effective Date and shall serve a copy of the same on the above-referenced parties. The notice of the Effective Date may be included in the Confirmation Order Notice. Notwithstanding the above, no notice of Confirmation or Consummation or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. The above-referenced notices are adequate under the particular circumstances of these Chapter 11 Cases and no other or further notice is necessary.

113. **Effect of Non-Occurrence of Conditions to the Effective Date.** If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtors; (b) prejudice in any manner the rights of the Debtors, any Holders of a Claim or Interest or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.

114. **Substantial Consummation.** On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

115. **Waiver of Stay.** For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

116.    **References to and Omissions of Plan Provisions.**    References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.  The failure to specifically include or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by this reference.

117.    **Headings.**  Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

118.    **Effect of Conflict.**  This Confirmation Order supersedes any Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order.  If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order govern and control.

119.    **Final Order.**  This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.

120.    **Retention of Jurisdiction.**  The Court may properly, and upon the Effective Date shall, to the full extent set forth in the Plan, retain jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases, including the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

Dated: _____, 2016
Wilmington, Delaware

_____
THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

48

# EXHIBIT A

**The Plan**

**EXHIBIT B**

**Proposed Confirmation Order Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|   |   |   |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DEX MEDIA, INC., *et al.*,[1] | ) | Case No. 16-11200 (KG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. [__]** |

**NOTICE OF (I) ENTRY OF ORDER APPROVING**
**THE DEBTORS' DISCLOSURE STATEMENT FOR, AND**
**CONFIRMING, THE DEBTORS' AMENDED JOINT PREPACKAGED**
**CHAPTER 11 PLAN AND (II) OCCURRENCE OF EFFECTIVE DATE**

**PLEASE TAKE NOTICE** that on [___], 2016, the Honorable Kevin Gross, United States Bankruptcy Judge for the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), entered the *Order Approving the Debtors' Disclosure Statement for, and Confirming, the Debtors' Amended Joint Prepackaged Chapter 11 Plan* [Docket No. [__]] (the "Confirmation Order") confirming the Plan[2] and approving the Disclosure Statement [Docket No. 19] of the above-captioned debtors (the "Debtors").

**PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Plan occurred on **[_____], 2016**.

**PLEASE TAKE FURTHER NOTICE** that the Confirmation Order and the Plan are available for inspection. If you would like to obtain a copy of the Confirmation Order or the Plan, you may contact Epiq Bankruptcy Solutions, LLC, the notice, claims, and solicitations agent retained by the Debtors in these Chapter 11 Cases, by:  (a) calling the Debtors' restructuring hotline at:  646-282-2500; (b) visiting the Debtors' restructuring website at: http://dm.epiq11.com/DexMedia; and/or (c) writing to Dex Ballot Processing, c/o Epiq Corporate Restructuring, 777 Third Avenue, 12th Floor, New York, NY 10017.  You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: www.deb.uscourts.gov.

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, include:  Dex Media, Inc. (0040); Dex Media East, Inc. (5763); Dex Media Holdings, Inc. (9762); Dex Media Service LLC (9647); Dex Media West, Inc. (7004); Dex One Digital, Inc. (9750); Dex One Service, Inc. (0222); R.H. Donnelley APIL, Inc. (6495); R.H. Donnelley Corporation (2490); R.H. Donnelley Inc. (7635); SuperMedia Inc. (5175); SuperMedia LLC (6092);and SuperMedia Sales Inc. (4411).  The location of the Debtors' service address is:  2200 West Airfield Drive, P.O. Box 619810, DFW Airport, Texas 75261.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the *Joint Prepackaged Chapter 11 Plan of Reorganization of Dex Media, Inc. and Its Debtor Affiliates* [Docket No. 18] (as modified, amended, and including all supplements, the "Plan").

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court has approved certain discharge, release, exculpation, injunction, and related provisions in Article VIII of the Plan.

**PLEASE TAKE FURTHER NOTICE** that any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan must be filed with the Bankruptcy Court on or before 30 days after the Effective Date.  Any such objection will be scheduled to be heard by the Bankruptcy Court at the Debtors' or Reorganized Debtors', as applicable, first scheduled omnibus hearing for which such objection is timely filed.  Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.

**PLEASE TAKE FURTHER NOTICE** that the Plan and its provisions are binding upon the Debtors or the Reorganized Debtors, as applicable, and any and all Holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

**PLEASE TAKE FURTHER NOTICE** that the Plan and the Confirmation Order contain other provisions that may affect your rights.  You are encouraged to review the Plan and the Confirmation Order in their entirety.

[*Remainder of page intentionally left blank*]

Wilmington, Delaware
Dated:  _____, 2016

Pauline K. Morgan (Bar No. 3650)
Patrick A. Jackson (Bar No. 4976)
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 571-6600
Facsimile:    (302) 571-1253
Email:          pmorgan@ycst.com
                   pjackson@ycst.com

- and -

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Adam Paul (admitted *pro hac vice*)
Bradley Thomas Giordano (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:          james.sprayregen@kirkland.com
                   marc.kieselstein@kirkland.com
                   adam.paul@kirkland.com
                   bradley.giordano@kirkland.com

*Counsel for the Debtors and Debtors in Possession*